1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAFETY STAR, LLC, a Missouri limited
liability company,

      Plaintiff,

v.

APTIBYTE, LLC, a Washington limited
liability company,

      Defendant.

Case No. 2:23-cv-05440-DGE

DEFENDANT APTIBYTE, LLC'S
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

NOTE ON MOTION CALENDAR:
August 4, 2023

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

# TABLE OF CONTENTS

FACTUAL ALLEGATIONS ......................................................................... 1

I.     Safety Star and its Alleged "B-SAFE Trademarks" ................................. 1

II.    Aptibyte and its BingoBaker Website ................................................. 2

III.   Procedural History ......................................................................... 3

DISCUSSION ........................................................................................ 3

I.     Rule 12 Standards for Dismissal ...................................................... 3

       A.     Rule 12(b)(1) – Safety Star's Lack of Standing .......................... 3

       B.     Rule 12(b)(6) – Safety Star's Failure to State a Claim for Relief ........... 4

II.    Safety Star Lacks Standing to Assert Any of Its Trademark-Based Claims ................... 5

       A.     Safety Star Fails to Allege its Ownership of the Trademark Rights At Issue ........ 5

              1.     Culbertson is the apparent owner of the relevant trademark rights ........... 5

              2.     Safety Star fails to plausibly allege its standing as a result of its collective reliance on the "B-SAFE Trademarks" for all of its claims ......... 7

       B.     Safety Star Admits Its Alleged Trademark Registration is Junior to Aptibyte's Alleged Use and Fails to Allege Prior Knowledge .............................. 8

III.   Even if Safety Star Had Standing, It Fails to Establish an Entitlement to Relief ............ 10

       A.     CDA 230 Bars All of Safety Star's State Law Claims ........................... 10

              1.     Aptibyte is an ICS ............................................................. 11

              2.     Safety Star's state law claims seek to treat Aptibyte as the publisher or speaker of user-generated content on the BingoBaker website ........ 11

              3.     No exception to CDA 230 immunity applies to the state law claims ....... 14

       B.     Alternatively, Safety Star's Claims – All of Which Are Based on Alleged Trademark Infringement – Fail to State a Claim for Relief ......................... 14

              1.     Safety Star fails to state any claim under the Lanham Act ..................... 15

              2.     Safety Star's state law claims fail with its Lanham Act claims ............... 19

              3.     Safety Star's tortious interference with economic relations claim fails to plausibly allege the necessary elements ......................................... 20

IV.    Dismissal Should Be With Prejudice ................................................... 22

CONCLUSION ....................................................................................... 22

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>

3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 4

4

*Asia Econ. Inst. v. Xcentric Ventures, LLC*, No. CV 10-01360 SVW (PJWx),

5

    2011 U.S. Dist. LEXIS 145380 (C.D. Cal. May 4, 2011) ................................................ 10

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) .................................................... 11

6

*Black v. Google Inc.*, No. 10-02381 CW,

7

    2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13, 2010) .......................................... 13, 22

8

*BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-cv-03345-WHO,

9

    2021 U.S. Dist. LEXIS 46939 (N.D. Cal. Mar. 12, 2021) .............................................. 8

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005)...................................... 15

10

*Brown v. Transworld Sys. Inc.*, No. 2:20-cv-00669-DGE,

11

    2022 U.S. Dist. LEXIS 38834 (W.D. Wash. Feb. 17, 2022) ........................................ 4

12

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003)...................... 13

13

*City of Leavenworth v. Projekt Bayern Ass'n*, No. 2:22-CV-0174-TOR,

14

    2023 U.S. Dist. LEXIS 35866 (E.D. Wash. Mar. 3, 2023)...................................... 20, 21

15

*Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009)..........................................................3, 4

16

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) ............................ 12, 13

*Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ........................... 22

17

*Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975 (N.D. Cal. 2015)...................... *passim*

18

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774 (Fed. Cir. 1996) .......................... 8, 9

19

*Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1003 (N.D. Cal. 2022)........................................ 11

20

*Glick v. Townsend*, No. CV 15-21-M-DLC-JCL,

21

    2015 U.S. Dist. LEXIS 35213 (D. Mont. Mar. 20, 2015)........................................ 6, 7

22

*Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................ 13

23

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021) .................................................... 12

24

*Greensun Group, LLC v. City of Bellevue*, 7 Wn. App. 2d 754 (2019)...................................... 21

25

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) ............................ 12

26

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) ......................................................... 11, 13

27

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ............................................................ 4

*Lahoti v. Vericheck, Inc.*, No. C06-1132JLR,
    2007 U.S. Dist. LEXIS 64666 (W.D. Wash. Aug. 30, 2007) ........................................... 15

*LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx),
    2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) ................................................... 8

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017) ........................................... 14

*Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133 (1997) ........................................... 20

*Life Designs Ranch, Inc. v. Sommer*, 191 Wn. App. 320 (2015) ................................................. 21

*Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228 (9th Cir. 2022) ............................................. 15

*Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP),
    2019 U.S. Dist. LEXIS 170715 (S.D.N.Y. Sept. 30, 2019)....................................... 17, 18

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011)............... 18

*McCarthy v. Amazon.com, Inc.*, No. C23-0263JLR,
    2023 U.S. Dist. LEXIS 110801 (W.D. Wash. June 27, 2023)........................... 10, 14, 22

*Mountaineers Found. v. Mountaineers*, No. 2:19-cv-1819-RSL-TLF,
    2022 U.S. Dist. LEXIS 237892 (W.D. Wash. Apr. 8, 2022)............................................. 6

*Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*,
    361 F. Supp. 2d 1244 (E.D. Wash. 2004) ............................................................... 3, 4, 5

*Nw. Envtl. Advocates v. United States*, 283 F. Supp. 3d 982 (W.D. Wash. 2017) ........................ 4

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) ............................. 10, 14

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) .................................. 4, 18

*Philips N. Am., LLC v. Summit Imaging Inc.*, No. C19-1745JLR,
    2020 U.S. Dist. LEXIS 55073 (W.D. Wash. Mar. 30, 2020) ......................................... 20

*Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924)......................................................................... 16

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190 (9th Cir. 2012) .................................. 6

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) ........................................................ 22

*Rooney v. Cortines*, No. CV 09-4770 ODW (PJWx),
    2009 U.S. Dist. LEXIS 135658 (C.D. Cal. Sept. 3, 2009)................................................. 8

*SafeWorks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181 (W.D. Wash. 2010) ............... 15, 20

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015)...................................................... 14

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996) ......................................... 5

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
    845 F.3d 1246 (9th Cir. 2017) ........................................................................ 15

*Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG,
    2016 U.S. Dist. LEXIS 36444 (N.D. Cal. Mar. 21, 2016).......................... 18, 19

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...................................................... 4

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................... 17, 18

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ................ 14

## **Rules and Statutes**

15 U.S.C. § 1055........................................................................................... 6

15 U.S.C. § 1057(c) ...................................................................................... 9

15 U.S.C. § 1114....................................................................................... 3, 8

15 U.S.C. § 1114(1)(a) ................................................................................ 16

15 U.S.C. § 1115(b)(5) ................................................................................. 9

15 U.S.C. § 1125(a) ...................................................................................... 3

15 U.S.C. § 1125(a)(1) ................................................................................ 16

15 U.S.C. § 1127........................................................................................... 8

47 U.S.C. § 230.................................................................................... *passim*

47 U.S.C. § 230(c)(1)............................................................................. 10, 11

47 U.S.C. § 230(e)(2).................................................................................. 14

47 U.S.C. § 230(e)(3).................................................................................. 10

47 U.S.C. § 230(f)(2).................................................................................. 11

Fᴇᴅ. R. Cɪᴠ. P. 8(a)(2) .................................................................................. 4

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(1) ................................................................................ 3

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) ................................................................................ 4

RCW 19.86.020 ............................................................................................ 3

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Plaintiff Safety Star, LLC's Complaint is fundamentally and fatally flawed for at least several reasons.

First, although Safety Star relies collectively on two trademarks as the basis for each of its claims, it is apparent from the Complaint that it does not own one of those marks. As Safety Star does not differentiate between the marks in any of the claims – referring to them collectively as the "B-SAFE Trademarks" – Safety Star's standing to assert *any* of the claims is in question. Second, even assuming Safety Star had adequately alleged its standing, its claims, all of which are based on alleged trademark infringement, fail to state a claim for relief as it does not, and cannot, allege that Defendant Aptibyte, LLC made commercial use of the marks it claims to own. Third, because all of Safety Star's state law claims are based on user-generated content – bingo cards allegedly bearing Safety Star's marks that users generated on Aptibyte's bingo-card generator website – those claims are barred by Section 230 of the Communications Decency Act. Fourth, Safety Star's fifth cause of action for tortious interference with economic relations fails as it is devoid of factual allegations supporting the necessary elements.

The fundamental nature of these flaws renders any attempt to cure them by amendment futile. As a consequence, Aptibyte respectfully requests that Safety Star's Complaint be dismissed in its entirety, with prejudice.

## FACTUAL ALLEGATIONS

### I. Safety Star and its Alleged "B-SAFE Trademarks"

Safety Star alleges that it provides "safety awareness programs and products" to consumers, including a "proprietary safety bingo program" under the alleged trademarks B-SAFE and BSAFE BINGO, which it refers to collectively as the "B-SAFE Trademarks." (Dkt. 1 at ¶¶ 8-9, 16.) Safety Star alleges that it has marketed and sold its "safety bingo program" under the "B-SAFE Trademarks" since 1992. (*Id.* at ¶ 9.) It allegedly markets and offers for sale its "safety bingo program" directly to consumers. (*Id.* at ¶ 13.)

Safety Star alleges that it "is the owner" of two trademark registrations for the "B-SAFE Trademarks": (1) Registration No. 3,032,329 for the B-SAFE mark for "[b]ingo-type game cards

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

for use in promoting safety"; and (2) Registration No. 5,660,503 for the BSAFE BINGO mark for "[b]oard games designed to promote employee safety awareness". (Dkt. 1 at ¶ 16.) However, the trademark registration certificates attached to the Complaint indicate that an individual – Beau Culbertson – is the owner of the B-SAFE registration, not Safety Star. (*See id.* at Ex. 3.) Therefore, Safety Star's allegations regarding its ownership of the registrations for the "B-SAFE Trademarks" and its reliance on Culbertson's registration for the B-SAFE mark (*see, e.g.*, *id.* at ¶¶ 16-21, 40-42, 45-50, 62, 73, 75-76) are contradicted by Safety Star's own Complaint.

Moreover, Safety Star's alleged BSAFE BINGO mark is essentially identical to Culbertson's senior B-SAFE mark. Culbertson's B-SAFE mark was registered in December 2005 (Dkt. 1 at Ex. 3), while Safety Star's alleged BSAFE BINGO mark was not registered until January 2019 (*id.* at Ex. 4). However, the "BINGO" component of Safety Star's alleged mark is generic and therefore Safety Star was required to disclaim exclusive rights to that portion of the mark. (*Id.*) Thus, the allegedly distinctive component of both marks is "BSAFE." And both "B-SAFE Trademarks" are used in connection with the same goods. (*See id.* at ¶¶ 12-13, Exs. 1, 2.) Safety Star also conflates the two marks throughout its Complaint, consistently referring to them collectively as the "B-SAFE Trademarks" used in connection with the "B-SAFE Bingo Program." (*See, e.g.*, *id.* at ¶¶ 9, 16-21, 40-42, 45-50, 62, 73, 75-76.)

## II.     Aptibyte and its BingoBaker Website

Aptibyte operates a website, BingoBaker.com, that offers a "bingo card generator" which allows users to create their own bingo cards. (Dkt. 1 at Ex. 5 (using the slogan "Whip up a batch of bingo cards!").) As Safety Star's Complaint demonstrates, the bingo card generator relies on content provided by the user; users enter a "bingo card title, choose a size, and type [their] words into the squares." (*Id.* at Ex. 5, p. 8.) Users can also "drag-and-drop images into the squares and customize the color scheme" of the bingo cards they create. (*Id.*; *see also id.* at Ex. 5, p. 9 (describing in more detail how users can generate their bingo card creations).)

Although Safety Star takes pains to suggest – but not actually allege – that Aptibyte is the creator of the bingo cards on its bingo card generator website, Safety Star acknowledges that the

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

bingo cards are user generated. For example, in paragraph 35 of the Complaint, Safety Star

alleges that Aptibyte "could have implemented a . . . software mechanism to ***prevent consumers***

***from generating bingo cards*** that incorporate the B-SAFE Trademarks[.]" (Dkt. 1 at ¶ 35

(emphasis added).) Similarly, in the cease-and-desist letter attached to its Complaint, Safety Star

demanded that Aptibyte "***[p]revent visitors of <bingobaker.com> from generating, printing, or***

***otherwise creating any bingo cards*** bearing any of the trademarks BSAFE, B-SAFE, and

SAFETY STAR." (*Id.* at Ex. 7, p. 14 (emphasis added).)

### III.    Procedural History

Safety Star filed its Complaint on May 15, 2023, alleging five causes of action, all of

which are based on its alleged trademark rights in the "B-SAFE Trademarks": federal trademark

infringement, 15 U.S.C. § 1114; false designation of origin, 15 U.S.C. § 1125(a); unfair

competition under Washington's Consumer Protection Act, RCW 19.86.020 ("CPA"); common

law unfair competition; and tortious interference with economic relations. (Dkt. 1 at pp. 7-12.)

Aptibyte was served on May 18, 2023. (Dkt. 8.) Pursuant to the parties' stipulation (Dkt. 11),

Aptibyte's deadline to respond to the Complaint was extended to July 10, 2023 (Dkt. 13).

### DISCUSSION

### I.    Rule 12 Standards for Dismissal

#### A.    Rule 12(b)(1) – Safety Star's Lack of Standing

Under FED. R. CIV. P. 12(b)(1), a party may seek dismissal of an action for lack of subject

matter jurisdiction. "[I]t is appropriate to address the question of standing in deciding a motion to

dismiss" as standing is "an indispensable part of the plaintiff's case, and accordingly must be

supported at each stage of litigation[.]" *Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*,

361 F. Supp. 2d 1244, 1248 (E.D. Wash. 2004) (internal quotation marks omitted).

The "burden of establishing standing remains at all times with the party invoking federal

jurisdiction." *Id*. Where the defendant brings a facial attack on subject matter jurisdiction, the

court assumes the factual allegations in the complaint are true and draws all reasonable

inferences in plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009); *see also*

*Nw. Envtl. Advocates v. United States*, 283 F. Supp. 3d 982, 987 (W.D. Wash. 2017). The court does not, however, accept the truth of legal conclusions "cast in the form of factual allegations." *Holy See*, 557 F.3d at 1073 (internal quotation marks omitted). Moreover, it is "well settled that standing cannot be inferred argumentatively from averments in the pleadings, . . . but rather must affirmatively appear in the record." *Nat'l Licensing*, 361 F. Supp. 2d at 1248 (internal quotation marks omitted).

### B.      Rule 12(b)(6) – Safety Star's Failure to State a Claim for Relief

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Brown v. Transworld Sys. Inc.*, No. 2:20-cv-00669-DGE, 2022 U.S. Dist. LEXIS 38834, *6-7 (W.D. Wash. Feb. 17, 2022) (plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action") (internal quotation marks omitted). Dismissal "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (internal quotation marks omitted).

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (the allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the [defendant] to be subjected to the expense of discovery and continued litigation"). Moreover, the Court "need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007).

MOTION TO DISMISS COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 4

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1    **II.**     **Safety Star Lacks Standing to Assert Any of Its Trademark-Based Claims**

2           As the Complaint demonstrates, all five of Safety Star's claims are based on its alleged

3    rights in the "B-SAFE Trademarks," which it refers to collectively and without differentiation

4    throughout the Complaint. However, on the face of the Complaint, it appears that Beau

5    Culbertson, not Safety Star, is the owner of the alleged trademark rights at issue. At the least, the

6    Complaint fails to clearly allege Safety Star's standing to assert those alleged rights as Safety

7    Star bases all of its claims on Aptibyte's alleged infringement of the "B-SAFE Trademarks"

8    collectively, notwithstanding the fact that the registrations only identify Safety Star as the owner

9    of one of the marks. In short, Safety Star has failed to plausibly allege that it has standing to

10   assert any of its claims.

11          **A.**     **Safety Star Fails to Allege its Ownership of the Trademark Rights At Issue**

12                      *1.*     *Culbertson is the apparent owner of the relevant trademark rights*

13          "To acquire ownership of a trademark . . . the party claiming ownership must have been

14   the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC*

15   *Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Safety Star essentially admits that it is not the

16   proper plaintiff by alleging that "[s]ince at least 1992, Plaintiff has continuously manufactured,

17   marketed, and sold the B-SAFE Bingo Program in commerce[.]" (Dkt. 1 at ¶ 10.) But that

18   allegation fails to account for the fact that it is Culbertson's senior registration for the B-SAFE

19   mark that alleges a first use date of 1992; Safety Star's first use date for its alleged BSAFE

20   BINGO mark was not until 2001. (*See id.* at Ex. 3 (first use date for B-SAFE mark), Ex. 4 (first

21   use date for BSAFE BINGO mark).) Although Safety Star's Complaint relies on Culbertson's

22   alleged trademark rights as a basis for its claims, Safety Star does not allege that Culbertson ever

23   assigned or licensed a property interest in his trademark rights to Safety Star that would give

24   Safety Star either a right to (1) register the junior BSAFE BINGO mark or (2) sue for

25   infringement of the B-SAFE mark. *See, e.g.*, *Nat'l Licensing*, 361 F. Supp. 2d at 1253-57

26   (discussing the ownership or commercial interest requirements to have standing to pursue claims

27   under Sections 1114 and 1125 of the Lanham Act).

MOTION TO DISMISS COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 5

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Accordingly, all goodwill in the "B-SAFE Trademarks" as used in connection with the "B-SAFE Bingo Program" would appear to belong to Culbertson, not Safety Star. The Lanham Act provides that "[w]here a registered mark . . . is or may be used legitimately by related companies, **such use shall inure to the benefit of the registrant**[.]" 15 U.S.C. § 1055 (emphasis added). *See also Mountaineers Found. v. Mountaineers*, No. 2:19-cv-1819-RSL-TLF, 2022 U.S. Dist. LEXIS 237892, *11 (W.D. Wash. Apr. 8, 2022) ("A licensee's properly licensed use of a trademark increases the legal and commercial strength of the licensed mark – **without providing ownership rights in the mark itself to the licensee**.") (emphasis added), *adopted in relevant part by*, 2023 U.S. Dist. LEXIS 21474 (W.D. Wash. Feb. 8, 2023).

Even assuming that the senior B-SAFE registrant "Beau Culbertson" is another name for Safety Star's founder "Albert Culbertson" (Dkt. 1 at ¶ 8, Ex. 3) and that Safety Star therefore claims to be a "related company" (none of which is alleged in the Complaint), Safety Star's use of the virtually identical BSAFE BINGO mark in connection with identical goods should inure to Culbertson's benefit, not Safety Star's. The Complaint fails to allege a connection between Beau Culbertson and Safety Star, let alone an assignment or license granting Safety Star the right to either (1) register the essentially identical mark for the same goods or (2) sue for alleged infringement of the "B-SAFE Trademarks." It does allege, however, that the use of the conflated "B-SAFE Trademarks" beginning in 1992 – that is, **Culbertson's** trademark rights – is the basis for all causes of action. (*See* Dkt. 1 at ¶¶ 9-10, 19 & Ex. 3.)

In *Glick v. Townsend*, the court found that the plaintiff did not have rights in his claimed trademark since he was not the first to "'actually use the mark in the sale of goods or services.'" No. CV 15-21-M-DLC-JCL, 2015 U.S. Dist. LEXIS 35213, *7 (D. Mont. Mar. 20, 2015) (quoting *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012)), *adopted by*, 2015 U.S. Dist. LEXIS 84158 (D. Mont. June 29, 2015), *aff'd*, 677 F. App'x 323 (9th Cir. 2017). The court concluded that the plaintiff's Lanham Act claims should be dismissed on the basis that "his pleading is subject to dismissal for failure to state a claim for trademark infringement upon which relief can be granted." *Glick*, 2015 U.S. Dist. LEXIS 35213 at *8. The

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

court also concluded that it should "decline to exercise supplemental jurisdiction over any claims [plaintiff] may have under [state] law." *Id.* at *10.

All use of the "B-SAFE Trademarks" inures to Culbertson's benefit, and all five causes of action are based on alleged infringement of trademarks that it appears only Culbertson may have senior rights to. Thus, based on the face of the Complaint, Safety Star lacks standing to bring any of its five claims, and its Complaint should therefore be dismissed.

> **2.**  **Safety Star fails to plausibly allege its standing as a result of its collective reliance on the "B-SAFE Trademarks" for all of its claims**

Additionally, Safety Star's Complaint is simply too vague to allege its standing to assert any of its claims, all of which are based on alleged infringement of the "B-SAFE Trademarks."

The murkiness of Safety Star's purported standing is compounded by Safety Star's failure to differentiate between the two "B-SAFE Trademarks." From beginning to end, Safety Star's Complaint relies on its purported "B-SAFE Trademarks" used in connection with the "B-SAFE Bingo Program" as the basis for all five claims. The first claim for federal trademark infringement alleges that Aptibyte infringed the "B-SAFE Trademarks." (*Id.* at ¶¶ 40-42.) The second claim for false designation of origin is based on "Plaintiff's" rights in the "B-SAFE Trademarks." (*Id.* at ¶¶ 45-50.) The third claim for unfair competition under the CPA references "Defendant's acts of infringement" and concludes with a request for "injunctive relief to permanently bar Defendant from use of B-SAFE Trademarks." (*Id.* at ¶ 62.) The fourth claim for common law unfair competition is essentially a verbatim copy of the third claim. (*Id.* at ¶¶ 64-73.) And the fifth claim for tortious interference with economic relations is based on Aptibyte's alleged offering of bingo cards using the "B-SAFE Trademarks." (*Id.* at ¶¶ 75-77.)

None of the five claims differentiates between the two "B-SAFE Trademarks" for purposes of alleging the wrongful conduct. Thus, even assuming *arguendo* that Safety Star owned some trademark rights in one of the "B-SAFE Trademarks," it is impossible to tell from the Complaint (1) which mark Aptibyte allegedly infringed for purposes of each of Safety Star's claims and (2) therefore which claims Safety Star may have sufficiently alleged its standing to

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

assert. Courts regularly dismiss causes of action that are similarly unclear. *See, e.g.*, *BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-cv-03345-WHO, 2021 U.S. Dist. LEXIS 46939, *40 (N.D. Cal. Mar. 12, 2021) ("Plaintiffs have not adequately pleaded BMA's standing as it is unclear whether it is seeking to vindicate its own rights as opposed to the rights of its members."); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 U.S. Dist. LEXIS 50543, *9-10 (C.D. Cal. Apr. 28, 2011) (dismissing claim when "it is not clear that Plaintiffs have even alleged [the "injury in fact" requirement of standing]"); *Rooney v. Cortines*, No. CV 09-4770 ODW (PJWx), 2009 U.S. Dist. LEXIS 135658, *5 (C.D. Cal. Sept. 3, 2009) (dismissing employment contract-based claims as it was "not clear in the Complaint by whom Plaintiff was employed").

### B.   Safety Star Admits Its Alleged Trademark Registration is Junior to Aptibyte's Alleged Use and Fails to Allege Prior Knowledge

Safety Star's first claim for federal trademark infringement is based on its alleged rights in a registered trademark that are senior to Aptibyte's alleged rights in the mark. Safety Star purports to rely on both of the "B-SAFE Trademarks" for this claim. However, the Complaint fails to plausibly allege facts supporting Safety Star's standing to assert the claim.

First, an action for trademark infringement may be brought by the "registrant" of the mark. 15 U.S.C. § 1114. *See also* 15 U.S.C. § 1127 (defining "registrant" to include "the legal representatives, predecessors, successors and assigns of such . . . registrant"). A party lacks standing to sue for trademark infringement if it does not own the trademark at issue. *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996). There must be ownership at the time the suit was filed. *Id.* A subsequent assignment conferring ownership, even if purported to be retroactive, cannot cure a defect in standing. *Id.* at 779-80. As discussed above, based on the allegations in and the exhibits attached to the Complaint, Culbertson owns all rights to the "B-SAFE Trademarks," has not assigned the senior B-SAFE mark to Safety Star, and cannot cure this failure with a subsequent assignment.

Second, even assuming *arguendo* that Aptibyte is using a "B-SAFE Trademark," Safety Star is not the senior registrant of a mark that is confusingly similar to Aptibyte's. In the first

MOTION TO DISMISS COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 8

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

claim for trademark infringement, Safety Star alleges that "Defendant's use of the B-SAFE Trademarks constitutes an infringement of Plaintiff's trademarks." (Dkt. 1 at ¶ 40.) But as shown in the Complaint, the application to register the "B-SAFE Trademark" allegedly owned by Safety Star – BSAFE BINGO – was filed in June 2018 and only registered in January 2019. (*Id*. at Ex. 4.) Safety Star, however, alleges that Aptibyte began "offer[ing] bingo cards bearing the B-SAFE Trademarks since at least 2017." (*Id.* at ¶ 26.) Since Safety Star did not apply to register the BSAFE BINGO mark until 2018 and the mark was not registered until 2019 – both occurring after Aptibyte's alleged first use of the "B-SAFE Trademarks" – the registration cannot serve as a basis for Safety Star's first claim.

Safety Star also does not allege that Aptibyte knew of its alleged BSAFE BINGO mark prior to March 2020, when it sent Aptibyte a cease-and-desist letter. (Dkt. 1 at ¶ 29.) Accordingly, Safety has failed to state allegations sufficient to support a claim of federal trademark infringement. The Lanham Act provides that even an incontestable trademark registration – a status which Safety Star's alleged BSAFE BINGO registration has not yet achieved – is not infringed by a prior user who began its use of the alleged mark before the registrant's constructive use date of the mark (the application filing date) if that prior user has continuously used the mark after adopting it "without knowledge of the registrant's prior use." 15 U.S.C. § 1115(b)(5); *see also* 15 U.S.C. § 1057(c).

Third, the other "B-SAFE Trademark" Safety Star claims to own is B-SAFE, registered on December 20, 2005. But Beau Culbertson, not Safety Star, is the identified owner of that registration. (Dkt. 1 at Ex. 3.) Safety Star thus lacks standing to use the senior B-SAFE registration as a basis for its first claim for trademark infringement. *Gaia Techs.*, 93 F.3d at 777. Safety Star's allegations emphasize its reliance on the senior B-SAFE trademark registration as a basis for relief: "Plaintiff's [sic] [registration] for B-SAFE was filed for before and registered before Defendant's infringing use commenced." (Dkt. 1 at ¶ 19.) But according to Safety Star's own Complaint, it is not the owner of the B-SAFE registration. And Safety Star's 2019 BSAFE BINGO registration is junior to Aptibyte's alleged use of the "B-SAFE Trademarks" "since at

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

least 2017." (*Id.* at ¶ 26, Ex. 4.) Thus, Safety Star cannot rely on the B-SAFE registration as a basis for its first cause of action and it does not allege that Aptibyte knew of the alleged BSAFE BINGO mark prior to its registration date of 2019.

Therefore, for any or all of these reasons, Safety Star lacks standing to assert any of its claims, all of which are based upon the undifferentiated "B-SAFE Trademarks."

## III.    Even if Safety Star Had Standing, It Fails to Establish an Entitlement to Relief

Alternatively, there are additional independent grounds for dismissal of Safety Star's Complaint in its entirety. First, Safety Star's state law claims – all of which seek to hold Aptibyte liable for content created by the users of its website – are barred by Section 230 of the Communications Decency Act ("CDA 230"). Second, Safety Star's federal trademark claims fail to state a claim for direct trademark infringement and Safety Star does not, and cannot, allege a claim for contributory infringement. Third, Safety Star's tortious interference with economic relations claim fails to allege facts to support the necessary elements of the claim.

### A.    CDA 230 Bars All of Safety Star's State Law Claims

CDA 230 states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It preempts any contrary state law, 47 U.S.C. § 230(e)(3), and generally provides "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service," *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal quotation marks omitted). *See also McCarthy v. Amazon.com, Inc.*, No. C23-0263JLR, 2023 U.S. Dist. LEXIS 110801, *24-25 (W.D. Wash. June 27, 2023) ("Publishing encompasses any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.") (internal quotation marks omitted).

Demonstrating the "broad reach of the CDA," courts have found that it "bar[s] a panoply of torts[.]" *Asia Econ. Inst. v. Xcentric Ventures, LLC*, No. CV 10-01360 SVW (PJWx), 2011 U.S. Dist. LEXIS 145380, *21-22 (C.D. Cal. May 4, 2011) (CDA 230 barred claims for, among

others, unfair business practices, and interference with economic relations, and citing cases); *see also Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1003, 1006 (N.D. Cal. 2022) (claims under California's Unfair Competition Law); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 980, 982 (N.D. Cal. 2015) (claims for common law trademark infringement and unfair and unlawful business practices). Thus, the Ninth Circuit has made it abundantly clear that courts should not rely on a claim's label, but rather ask "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another"; "[i]f it does, section 230(c)(1) precludes liability." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009) (amended).

A defendant is immune under CDA 230 if: (1) it is the provider of an "interactive computer service" ("ICS"); (2) the asserted claims treat it as the publisher or speaker of the information; and (3) the information is provided by another information content provider. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). Here, each of the elements of CDA 230 immunity are satisfied and Safety Star's state law claims – the third through fifth causes of action – should therefore be dismissed with prejudice.

### 1.   *Aptibyte is an ICS*

Aptibyte is indisputably an ICS, which is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). The Ninth Circuit interprets ICS "expansive[ly]" and recognizes websites as the most common ICS. *Kimzey*, 836 F.3d at 1268 (internal quotation marks omitted). As alleged in the Complaint, Aptibyte operates the BingoBaker website. (*See, e.g.*, Dkt. 1 at ¶¶ 23-24 & Ex. 5.) Safety Star also alleges that multiple users can access the BingoBaker website. (*Id.* at ¶ 24 (alleging that the BingoBaker website is "directed to all consumers").) Thus, there can be no credible dispute that Aptibyte is an ICS.

### 2.   *Safety Star's state law claims seek to treat Aptibyte as the publisher or speaker of user-generated content on the BingoBaker website*

As to the second and third elements, at their core, Safety Star's state law claims seek to

hold Aptibyte liable for the content of bingo cards created and shared by users of its website.

There can be no dispute that the content at issue – the bingo cards that Safety Star claims infringe its "B-SAFE Trademarks" – were created by users of Aptibyte's bingo-card generator website and that Aptibyte acted as a publisher in displaying and/or hosting that user-generated content. The Complaint does not plausibly allege that Aptibyte "created or authored" the bingo cards at issue; rather, Safety Star alleges that Aptibyte "publish[es]," "distribut[es]," and "offers" the bingo cards. (*See, e.g.*, Dkt. 1 at ¶¶ 22, 25-26, 36.) Nor could Safety Star plausibly allege that Aptibyte created the cards. To the contrary, Safety Star acknowledges that the cards are user generated. (*See id.* at ¶ 35 (alleging that Aptibyte "could have . . . ***prevent[ed] consumers from generating bingo cards*** that incorporate the B-SAFE Trademarks") (emphasis added); *id.* at Ex. 7 (demanding in Safety Star's cease-and-desist letter that Aptibyte "***[p]revent visitors of <bingobaker.com> from generating, printing, or otherwise creating any bingo cards*** bearing any of the trademarks BSAFE [and] B-SAFE") (emphasis added).)

Nor could Safety Star plausibly allege that Aptibyte "materially contributed" to the allegedly unlawful content at issue – the allegedly infringing user-generated bingo cards – by offering its bingo card generator. First, the Ninth Circuit's "material contribution" test "does not mean 'merely taking action that is necessary to the display of the allegedly illegal content,' but rather, 'being responsible for what makes the displayed content allegedly unlawful.'" *Gonzalez v. Google LLC*, 2 F.4th 871, 892 (9th Cir. 2021) (quoting *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014)), *vacated & remanded on other grounds*, 143 S. Ct. 1191 (2023). Here, Safety Star does not, and cannot, allege that Aptibyte materially contributed to the allegedly infringing use of its marks on the user-generated bingo cards.

Second, Aptibyte's mere provision of an online bingo card generator or instructions on how to use the generator to create bingo cards neither constitutes material contribution to allegedly unlawful content nor transforms Aptibyte into an information content provider. To the contrary, courts consistently hold that a website's offering of neutral "tools meant to facilitate the communication and content of others" does not divest an ICS of CDA 230 immunity. *Dyroff v.*

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019); *see also Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905, *7-8 (N.D. Cal. Aug. 13, 2010) ("courts have considered and rejected theories that an [ICS] could be held liable merely because its programming facilitated the creation of the content at issue"), *aff'd*, 457 F. App'x 622 (9th Cir. 2011). Here, Aptibyte's online bingo card generator is precisely the type of neutral tool that allows users to create content of their choosing. The bingo card generator merely provides a tool for users to "Whip up a batch of bingo cards" with content of their choosing. (Dkt. 1 at Ex. 5, p. 7.) Users enter a "bingo card title, choose a size, and type [their] words into the squares," and can "drag-and-drop images into the squares and customize the color scheme" of the bingo cards they create. (*Id.* at Ex. 5, p. 8.) *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122, 1124 (9th Cir. 2003) ("[S]o long as a third party willingly provides the essential published content, the [ICS] receives full immunity.").

Courts routinely find that such tools that allow users to post and share content of their own choosing do not constitute material contribution to the unlawful content users create using those tools. *See, e.g.*, *Dyroff*, 934 F.3d at 1099 (social networking website's functions allowing users to "post and share experiences, questions, and answers . . . did not materially contribute . . . to the alleged unlawfulness of the content" at issue); *Kimzey*, 836 F.3d at 1270 (Yelp's star-rating system "is best characterized as the kind of neutral tool[] operating on voluntary inputs that [the Ninth Circuit has] determined [does] not amount to content development or creation") (internal quotation marks omitted); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1198 (N.D. Cal. 2009) ("[A] plaintiff may not establish developer liability merely by alleging that the [website] operator . . . should have known that the availability of certain tools might facilitate the posting of improper content.").

Safety Star asserts that Aptibyte should have implemented a "software mechanism to prevent consumers from generating bingo cards that incorporate the B-SAFE Trademarks." (Dkt. 1 at ¶ 35; *see also id.* at Ex. 7, p. 14.) But that type of "monitoring, screening, and deletion of [user-generated] content" are "actions quintessentially related to a publisher's role" protected

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

by CDA 230. *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993 (S.D. Tex. 2017) (internal quotation marks omitted); *see also Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (finding that claim of failure to monitor and supervise site users was an attempt to treat defendant as a publisher of information provided by a third party). And Aptibyte's receipt of Safety Star's cease-and-desist letter notifying it of the allegedly unlawful nature of the user-generated content does not defeat CDA 230 immunity. *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) ("It is . . . well established that notice of the unlawful nature of the information provided isn't enough to make it the [ICS's] own speech.").

Thus, Safety Star's state law claims are barred by CDA 230 and should be dismissed with prejudice. *See McCarthy*, 2023 U.S. Dist. LEXIS 110801 at *26, 39 (dismissing intentional concealment claim as plaintiffs failed to plausibly allege that Amazon provided, created, or developed the content at issue – negative reviews posted by users – and therefore only "users of Amazon.com, not Amazon, acted as information content providers").

### 3.    *No exception to CDA 230 immunity applies to the state law claims*

Nor are Safety Star's state law claims exempted from CDA 230 immunity under Ninth Circuit precedent. CDA 230 excludes from immunity "any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). However, the Ninth Circuit has "construe[d] the term 'intellectual property' to mean 'federal intellectual property'" and therefore held that the exception does not apply to state law intellectual property claims. *Perfect 10*, 488 F.3d at 1108, 1118-19 (CDA 230 barred state law claims for violation of right of publicity, unfair competition, and false and misleading advertising); *see also Free Kick Master*, 140 F. Supp. 3d at 983 (rejecting argument that state law intellectual property claims were excluded from CDA 230 immunity). Therefore, notwithstanding that each of Safety Star's state law claims are based on trademarks it allegedly owns, no exception to CDA 230 immunity applies to those claims.

### B.    **Alternatively, Safety Star's Claims – All of Which Are Based on Alleged Trademark Infringement – Fail to State a Claim for Relief**

Though they bear different labels, the core allegation of all of Safety Star's claims are

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

that Aptibyte used Safety Star's alleged "B-SAFE Trademarks" in a manner that is likely to cause confusion. (*See* Dkt. 1 at pp. 7-8 (federal trademark infringement claim), pp. 8-9 (false designation of origin based on alleged infringement), pp. 9-10 (violation of CPA based on alleged "acts of infringement"), pp. 10-12 (common law unfair competition based on alleged "acts of infringement"), p. 12 (tortious interference with economic relations based on trademark infringement).) However, because Safety Star cannot state a claim for federal trademark infringement against Aptibyte – whether based on registrations it claims to own or alleged common law rights – all of its claims fail to state any claim for relief.

### 1.    Safety Star fails to state any claim under the Lanham Act

In the first two causes of action, Safety Star alleges trademark infringement and false designation of origin under the Lanham Act, both of which allege infringement of the "B-SAFE Trademarks." (Dkt. 1 at pp. 7-9.) The elements of both claims are the same. *SafeWorks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1189 (W.D. Wash. 2010) (stating that elements of trademark infringement and false designation of origin claims under the Lanham Act are the same). For each, Safety Star must plausibly allege (1) that it owns a valid, protectable trademark, and (2) that Aptibyte used that mark in commerce on or in connection with goods or services in a manner that is likely to cause confusion. *Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1245, 1251-52 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 428 (2022); *see also Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017) (claims under Sections 1114 and 1125 "share a common inquiry: [w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?") (internal quotation marks omitted).

Even assuming Safety Star alleges a protectable mark that it owns, to state a claim for relief under both Sections 1114 and 1125, it must – but did not and cannot – allege that Aptibyte made commercial use of its alleged "B-SAFE Trademarks" in connection with the sale of goods or services. "Infringement claims are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005); *Lahoti v. Vericheck, Inc.*, No. C06-

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1132JLR, 2007 U.S. Dist. LEXIS 64666, *25 (W.D. Wash. Aug. 30, 2007) (plaintiff must show that defendant "made commercial use of a mark that is similar enough to cause confusion in the minds of consumers about the origin of the goods or services in question"); *see also* 15 U.S.C. § 1114(1)(a) (referencing a defendant's "use [of a mark] in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services" that is likely to cause confusion); 15 U.S.C. § 1125(a)(1) (referencing a defendant's "use[] [of a mark] in commerce" in connection with goods or services that is likely to cause confusion).

Here, Safety Star fails to allege such commercial use of its alleged "B-SAFE Trademarks" by Aptibyte in connection with the sale of goods or services. At most, it alleges that users – not Aptibyte – have used "bsafe" as the letters on user-generated bingo cards or as a description of the theme of such cards. (Dkt. 1 at Exs. 6, 8.) Indeed, such use – as the letters for a bingo card or as the theme of the content of a bingo card – arguably is not even trademark use (*e.g.*, use to identify the source of goods or services); Safety Star's conclusory allegation that such bingo cards "[bore] the mark BSAFE" (*see id.* at ¶ 26) does nothing to demonstrate that there was a trademark/commercial use of a mark Safety Star claims to own.

Safety Star attempts to obscure this fundamental flaw in its trademark claims by alleging that Aptibyte is "engaged in the business of operating an online bingo card system at its website www.bingobaker.com." (*Id.* at ¶ 23.) But even assuming that was an accurate characterization of Aptibyte's website, there is no allegation (nor could there be) that Aptibyte is using any trademark Safety Star claims to own to offer for sale a purported "online bingo card system." Rather, to the extent Aptibyte is offering such a system, it is offered under the "BingoBaker" mark. In short, Safety Star's only basis for its trademark claims is that some user-generated bingo cards hosted on Aptibyte's website use "bsafe" on the cards (*see id.* at ¶ 25); but merely referring to that term as a "mark" does not render any use of the term commercial use, much less use of any trademark Safety Star claims to own. *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (a trademark "does not confer a right to prohibit the use of the word").

Moreover, even if there were commercial use of Safety Star's marks (which Safety Star

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

has not alleged), any such use was ***by the users*** who created the bingo cards that included the alleged marks, not Aptibyte. Safety Star's assertion that Aptibyte purportedly could have "implemented a . . . software mechanism to prevent consumers from generating bingo cards that [allegedly] incorporate the B-SAFE Trademarks" (Dkt. 1 at ¶ 35) conclusively demonstrates that its claims are based on the users' alleged use of Safety Star's marks. *See, e.g.*, *Free Kick Master*, 140 F. Supp. 3d at 979-80, 982 (finding no direct infringement claims where no allegation that Amazon and Google "themselves used the [plaintiff's] mark in commerce" as it was the third-party app developers who allegedly infringed plaintiff's mark); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) (concluding that eBay's alleged knowledge about counterfeit Tiffany products offered on its auction website may be "relevant to the issue of whether eBay contributed to the direct infringement of Tiffany's mark by the counterfeiting vendors" but "it is not a basis for a claim of direct trademark infringement against eBay").

Thus, Safety Star's claims for direct infringement and false designation of origin necessarily fail either because (1) Aptibyte has not made any commercial use of Safety Star's marks or (2) any alleged trademark use was by the users of Aptibyte's website, not Aptibyte. *See, e.g.*, *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 U.S. Dist. LEXIS 170715, *19-21 (S.D.N.Y. Sept. 30, 2019) (dismissing plaintiff's claim for direct trademark infringement against online platforms finding that it was "users of [the platforms'] services, who allegedly used [plaintiff's] trademark[s] in connection with the sale of goods—not [the platforms]") (internal quotation marks omitted); *Free Kick Master*, 140 F. Supp. 3d at 982 (dismissing direct trademark infringement and false designation of origin claims with respect to allegedly infringing apps available on the Google and Amazon app stores because plaintiff "allege[d] no facts showing that Amazon or Google in fact 'used' the mark or that that 'use' created a likelihood of confusion").

Nor could Safety Star plausibly allege a claim for contributory infringement, even assuming that it had pled such a claim in its Complaint. To state such a claim, Safety Star would have to establish that Aptibyte "(1) intentionally induced the primary infringer [the website user]

MOTION TO DISMISS COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 17

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10*, 494 F.3d at 807. Additionally, where the defendant provides a service, the plaintiff must establish that the service provider "continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement" and "the court must consider the extent of control exercised by the defendant over the third party's means of infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2011) (internal quotation marks omitted); *see also Tiffany*, 600 F.3d at 103-06.

Applying that standard, the Second Circuit in *Tiffany* held that eBay could not be liable for users' use of Tiffany's marks in connection with counterfeit goods sold on the auction website because:

> [f]or contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.

600 F.3d at 107. Tiffany's generalized allegations regarding counterfeiting occurring on eBay failed to give it the particularized knowledge required for a contributory infringement claim. *Id.* at 109. And, although eBay did receive complaints about certain sellers selling counterfeits, "those sellers' listings were removed and repeat offenders were suspended from the eBay site." *Id*. Thus, the court concluded that "Tiffany failed to demonstrate that eBay was supplying its service to individuals who it knew or had reason to know were selling counterfeit Tiffany goods." *Id*. *See also Lopez*, 2019 U.S. Dist. LEXIS 170715 at *31-39 (rejecting contributory trademark infringement claim against online platforms based in part on the conclusion that the platforms did not have the requisite knowledge of specific infringing conduct that the platforms did not address); *Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG, 2016 U.S. Dist. LEXIS 36444, *10 (N.D. Cal. Mar. 21, 2016) ("Absent specific notice of trademark infringement, Google cannot be liable for contributory infringement merely for failing to remove infringing apps preemptively."); *Free Kick Master*, 140 F. Supp. 3d 982-83 (rejecting

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

contributory trademark infringement claim as plaintiff alleged no facts "showing that Amazon or Google intentionally induced the third-party developers to infringe plaintiff's mark, or that they knew that the third-party developers' apps/games were infringing plaintiff's mark but continued to allow the infringing apps/games to remain available").

Here, Safety Star could not plead a contributory trademark infringement claim as it cannot plausibly allege the necessary "contemporary knowledge of which particular [user content] are infringing or will infringe" that Aptibyte did not address in response to Safety Star's communications. *See Spy Phone*, 2016 U.S. Dist. LEXIS 36444 at *9. Safety Star's general allegations about alleged "infringing bingo cards" being hosted on Aptibyte's website and the absence of allegations that Aptibyte failed to address any such allegedly infringing cards in response to Safety Star's notices are insufficient to state such a claim. *See id.* ("Notice of certain acts of infringements does not imply generalized knowledge of—and liability for—others."). Moreover, Safety Star could not even establish that use of "bsafe" on user-generated bingo cards is infringing in every (or even any) situation, such that any contemporary knowledge it alleges Aptibyte may have about such use of the term equates with knowledge of infringement. Therefore, even if Safety Star had pled a contributory infringement claim, that claim would fail as it cannot make the necessary showing that specific infringing activity was occurring that Aptibyte had contemporary knowledge of and failed to address (*e.g.*, by removing the allegedly infringing user-generated content).

### 2. *Safety Star's state law claims fail with its Lanham Act claims*

Safety Star's remaining state law claims – unfair competition under the CPA, common law unfair competition, and tortious interference with economic relations – are all based on the same core allegation that Aptibyte infringed Safety Star's trademarks. (Dkt. 1 at pp. 9-10 (violation of CPA based on alleged "acts of infringement"), pp. 10-12 (common law unfair competition based on alleged "acts of infringement"), p. 12 (tortious interference with economic relations based on trademark infringement).) As a result, Safety Star's state law claims fall with its Lanham Act claims. Stated differently, because Safety Star does not and cannot allege that

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Aptibyte engaged in trademark infringement (whether directly or contributorily), its various state law claims based on alleged trademark infringement necessarily fail as well.

"The elements necessary to establish a likelihood of confusion for common law and statutory unfair competition claims in Washington are the same as for federal trademark infringement and unfair competition." *SafeWorks*, 717 F. Supp. 2d at 1192. Therefore, all of Safety Star's state law claims should be dismissed as a necessary consequence of Safety Star's failure to plausibly allege a claim for either trademark infringement or false designation of origin under the Lanham Act. *See, e.g.*, *City of Leavenworth v. Projekt Bayern Ass'n*, No. 2:22-CV-0174-TOR, 2023 U.S. Dist. LEXIS 35866, *11-12 (E.D. Wash. Mar. 3, 2023) (dismissing Section 1125 claims and finding that "unfair competition claims under the common law and Washington CPA" must also be dismissed as they were "premised on the same factual allegations"); *Philips N. Am., LLC v. Summit Imaging Inc.*, No. C19-1745JLR, 2020 U.S. Dist. LEXIS 55073, *22 (W.D. Wash. Mar. 30, 2020) (noting that "[c]laims under the CPA are substantially congruous with Lanham Act unfair competition claims" and therefore the conclusion that plaintiff failed to plead Lanham Act claim "applie[d] with equal force to defeat" the CPA claim) (internal quotation marks omitted).

### 3. *Safety Star's tortious interference with economic relations claim fails to plausibly allege the necessary elements*

To state a claim for tortious interference with a business expectancy, Safety Star must allege sufficient facts to demonstrate five elements:

> (1) the existence of a valid . . . business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997).

But here, Safety Star's tortious interference claim is devoid of factual allegations demonstrating any of the necessary elements. For example, Safety Star fails to allege any facts as to the business expectancy on which its claim is based. To demonstrate the existence of a

MOTION TO DISMISS COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 20

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

business expectancy, a plaintiff must plausibly allege a "'prospective . . . business relationship that would be of pecuniary value'"; but plaintiff "must have 'a reasonable expectation' in the future business prospect, not 'merely wishful thinking.'" *Leavenworth*, 2023 U.S. Dist. LEXIS 35866 at *14 (quoting *Greensun Group, LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 768-69 (2019)). Safety Star only vaguely alludes to "future economic detriment" (Dkt. 1 at ¶ 75) without specifying the reasonable business expectancy with which Aptibyte purportedly interfered.

Nor does Safety Star allege any facts demonstrating that Aptibyte – acting with an improper purpose or using improper means – intentionally interfered with the unspecified business expectancy thereby causing termination of that expectancy with resulting damage. "A party intentionally interferes with a business expectancy if it desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." *Greensun*, 7 Wn. App. 2d at 772 (internal quotation marks omitted). A plaintiff also must demonstrate that defendant "acted with improper motive, improper means, or both." *Id.* at 773. Improper means requires that plaintiff "demonstrate the defendant had a duty not to interfere" and used "wrongful means that in fact cause injury to plaintiff's . . . business relationships." *Id.* (internal quotation marks omitted). But Safety Star only alleges vaguely that Aptibyte "knew or should have known that offering bingo cards on its website using" Safety Star's alleged trademarks "would result or would have resulted in a future economic detriment to [it]" and "would only further consumer confusion and weaken the strength of [its] brand identity." (Dkt. 1 at ¶¶ 75-76.) None of these conclusory allegations state any *facts* demonstrating either an improper purpose or use of improper means, much less that Aptibyte intentionally interfered with Safety Star's business expectancy.

Even ignoring these deficiencies, Safety Star fails to allege any facts demonstrating (1) that its business expectancy was terminated or (2) that it suffered damage. Safety Star speaks only in terms of possible harm. (*Id.* at ¶¶ 75-76.) Although Safety Star declares that "[it] was harmed" (*Id.* at ¶ 78), there are no facts supporting that naked assertion. *See, e.g.*, *Life Designs Ranch, Inc. v. Sommer*, 191 Wn. App. 320, 338 (2015) (affirming dismissal of tortious

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

interference claim on summary judgment where plaintiff "fail[ed] to show resultant damage to its business expectancy").

Because Safety Star fails to allege any facts establishing its entitlement to relief, its tortious interference claim should be dismissed.

**IV.    Dismissal Should Be With Prejudice**

Although the Federal Rules of Civil Procedure generally embody a principle of liberally permitting amendment of pleadings, that principle does not require the Court to allow futile amendments. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990). Here, futility supports dismissal of Safety Star's claims with prejudice for at least two reasons.

First, as discussed above, because Safety Star cannot establish commercial use by Aptibyte of any trademark it claims to own, it cannot allege any plausible trademark-based claim against Aptibyte. No amendment can remedy that fatal flaw in each of Safety Star's claims, all of which are grounded in alleged trademark infringement.

Second, courts routinely deny leave to amend where, as here, CDA 230 bars the claims. *See, e.g.*, *McCarthy*, 2023 U.S. Dist. LEXIS 110801 at *39 (denying leave to amend where claim was barred by CDA 230); *Black*, 2010 U.S. Dist. LEXIS 82905 at *9 (dismissing complaint with prejudice as amendment would be futile because it was clear the action was based on third-party content). The result should be no different here with respect to Safety Star's state law claims. Dismissal without leave to amend is particularly appropriate as the Ninth Circuit has stated that CDA 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008).

As a result, dismissal should be with prejudice and without leave to amend.

## CONCLUSION

As described herein, Safety Star's Complaint suffers from a number of fundamental and fatal flaws that warrant dismissal of the Complaint in its entirety. Additionally, because any attempted amendment to correct those flaws would be futile, Safety Star's Complaint should be

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  dismissed with prejudice.

2  Dated this 10th day of July, 2023.                Respectfully submitted,

3                                                    FOCAL PLLC

4                                            By:  *s/ Stacia N. Lay*
                                                  *s/ Randall H. Moeller*
5                                                  Stacia N. Lay, WSBA #30594
                                                  Randall H. Moeller, WSBA #21094
6                                                  900 1st Avenue S., Suite 201
                                                  Seattle, Washington 98134
7                                                  Tel: (206) 529-4827
                                                  Fax: (206) 260-3966
8                                                  Email: stacia@focallaw.com
                                                  Email: randall@focallaw.com
9
                                                  Attorneys for Defendant Aptibyte, LLC
10

11

12                           **<u>WORD LIMIT CERTIFICATION</u>**

13          I certify that this memorandum contains 8,355 words, in compliance with the Local Civil

14  Rules.

15                                            By:  *s/ Stacia N. Lay*
                                                  Stacia N. Lay, WSBA #30594
16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO DISMISS COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 23

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966