1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAFETY STAR, LLC, a Missouri limited
liability company,

       Plaintiff,

v.

APTIBYTE, LLC, a Washington limited
liability company,

       Defendant.

Case No. 2:23-cv-05440-DGE

DEFENDANT APTIBYTE, LLC'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

NOTE ON MOTION CALENDAR:
September 1, 2023

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE)

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1

**TABLE OF CONTENTS**

2  FACTUAL ALLEGATIONS ............................................................................................... 1

3  I.    Safety Star, its Alleged "B-SAFE Trademarks," and the Alleged Assignment................. 1

4  II.   Aptibyte and its BingoBaker Website...................................................................... 3

5  III.  Procedural History ................................................................................................ 3

6  DISCUSSION ................................................................................................................. 4

7  I.    Rule 12 Standards for Dismissal ............................................................................ 4

8        A.    Rule 12(b)(1) – Safety Star's Lack of Standing................................................ 4

9        B.    Rule 12(b)(6) – Safety Star's Failure to State a Claim for Relief........................... 4

10 II.   The Court Should Take Judicial Notice of USPTO Records for Safety Star's
        Alleged "B-SAFE Trademarks" ............................................................................ 5

11 III.  Safety Star Lacks Standing to Assert Both of Its Trademark Claims................................ 6

12       A.    The Alleged Assignment is a Backdated *Nunc Pro Tunc* Assignment,
13             Which is Insufficient for Standing At the Time the Lawsuit Was Filed ................ 7

14       B.    Without a Valid Trademark Assignment, Safety Star Lacks Standing................. 10

15             1.    Culbertson is the apparent owner of the relevant trademark rights .......... 10

16             2.    Safety Star fails to plausibly allege its standing as a result of its
                     collective reliance on the "B-SAFE Trademarks" for its claims ............. 11

17       C.    Safety Star Admits Its Alleged Trademark Registration is Junior to
               Aptibyte's Alleged Use and Fails to Allege Prior Knowledge ........................... 12

18 IV.   Even if Safety Star Had Standing, It Again Fails to Establish an Entitlement to
19       Relief Under the Lanham Act ............................................................................... 14

20       A.    The Claims for Direct Infringement Fail As Safety Star Does Not and
               Cannot Plausibly Allege Commercial Use of the Marks by Aptibyte ................. 14

21       B.    Even If Safety Star Attempts to Rely on a Theory of Contributory
               Infringement, Any Such Claim Would Also Be Subject to Dismissal ................ 19

22 V.    Safety Star's FAC Demonstrates That Dismissal Should Be With Prejudice ................. 21

23 CONCLUSION.............................................................................................................. 22

24

25

26

27

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – i

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

# TABLE OF AUTHORITIES

**Cases**

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) ............................................ 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 5, 7

*Atari Interactive, Inc. v. Redbubble, Inc.*, No. 21-17062,
    2023 U.S. App. LEXIS 18805 (9th Cir. July 24, 2023) ............................................... 21

*BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-cv-03345-WHO,
    2021 U.S. Dist. LEXIS 46939 (N.D. Cal. Mar. 12, 2021) ............................................ 12

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) ................................... 15, 17

*Calderon v. Linebarger Goggan Blair & Sampson LLP*, No. 3:22-cv-05962-DGE,
    2023 U.S. Dist. LEXIS 47844 (W.D. Wash. Mar. 21, 2023) ........................................ 5

*Cave Man Kitchens Inc. v. Caveman Foods, LLC*, No. C18-273 TSZ,
    2018 U.S. Dist. LEXIS 146835 (W.D. Wash. Aug. 28, 2018) ....................................... 9

*Cave Man Kitchens, Inc. v. Caveman Foods, LLC*, No. 2:18-cv-01274 RAJ,
    2019 U.S. Dist. LEXIS 140135 (W.D. Wash. Aug. 19, 2019) ................................... 5, 6

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004) ............................................................ 9

*Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009) ...................................................................... 4

*Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975 (N.D. Cal. 2015) ...................... 18, 20

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774 (Fed. Cir. 1996) ............... 9, 12, 13

*Glick v. Townsend*, No. CV 15-21-M-DLC-JCL,
    2015 U.S. Dist. LEXIS 35213 (D. Mont. Mar. 20, 2015) ............................................ 11

*Hanson v. MGM Resorts Int'l*, No. C16-1661-RAJ,
    2017 U.S. Dist. LEXIS 113690 (W.D. Wash. July 20, 2017) ......................................... 8

*Hewitt v. Wells Fargo Bank*, No. 3:22-cv-05729-DGE,
    2022 U.S. Dist. LEXIS 211806 (W.D. Wash. Nov. 22, 2022) ........................................ 5

*Johnson v. Meta Platforms, Inc.*, No. 22-cv-05691-BLF,
    2023 U.S. Dist. LEXIS 136027 (N.D. Cal. Aug. 4, 2023) ............................................ 18

*Lahoti v. Vericheck, Inc.*, No. C06-1132JLR,
    2007 U.S. Dist. LEXIS 64666 (W.D. Wash. Aug. 30, 2007) ........................................ 15

*LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx),
    2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) ............................................ 12

*Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228 (9th Cir. 2022) ...................................... 15

*Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP),
    2019 U.S. Dist. LEXIS 170715 (S.D.N.Y. Sept. 30, 2019) ................................ 18, 19, 22

**focal PLLC**
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011) ............... 19

*Micro/sys, Inc. v. DRS Techs., Inc.*, No. CV 14-3441 DMG (AJWx),
   2015 U.S. Dist. LEXIS 193891 (C.D. Cal. Feb. 13, 2015) ............................................ 22

*Mountaineers Found. v. Mountaineers*, No. 2:19-cv-1819-RSL-TLF,
   2022 U.S. Dist. LEXIS 237892 (W.D. Wash. Apr. 8, 2022) ........................................... 10

*Muertos Roasters, LLC v. Schneider*, No. 2:22-cv-00051-KJM-KJN,
   2022 U.S. Dist. LEXIS 156031 (E.D. Cal. Aug. 30, 2022) ............................................. 6

*Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*,
   361 F. Supp. 2d 1244 (E.D. Wash. 2004) .......................................................... 4

*Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-cv-00428-DGE,
   2022 U.S. Dist. LEXIS 33643 (W.D. Wash. Feb. 25, 2022) ........................................... 21

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS,
   2015 U.S. Dist. LEXIS 179509 (E.D. Wash. Nov. 30, 2015) .......................................... 22

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ...................................... 5, 19

*Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924) .......................................................... 17

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190 (9th Cir. 2012) ................................ 11

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) .................................................. 21

*Rooney v. Cortines*, No. CV 09-4770 ODW (PJWx),
   2009 U.S. Dist. LEXIS 135658 (C.D. Cal. Sept. 3, 2009) ............................................. 12

*SafeWorks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181 (W.D. Wash. 2010) ..................... 14

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996) ....................................... 10

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
   845 F.3d 1246 (9th Cir. 2017) .................................................................. 15

*Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG,
   2016 U.S. Dist. LEXIS 36444 (N.D. Cal. Mar. 21, 2016) ............................................. 20

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ............................................................. 5

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139 (N.D. Cal. 2020) ................ 6

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ............................................. 18, 19

*Y.Y.G.M. SA v. Redbubble, Inc.*, Nos. 21-56150 & 21-56236,
   2023 U.S. App. LEXIS 18743, __ F.4th ___ (9th Cir. July 24, 2023) ............................. 20

**Rules and Statutes**

15 U.S.C. § 1055 .......................................................................................... 10

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

15 U.S.C. § 1057(c) ............................................................................................................ 13

15 U.S.C. § 1114 ................................................................................................................ 15

15 U.S.C. § 1114(1) ........................................................................................................... 12

15 U.S.C. § 1114(1)(a) ...................................................................................................... 15

15 U.S.C. § 1115(b)(5) ...................................................................................................... 13

15 U.S.C. § 1125 ................................................................................................................ 15

15 U.S.C. § 1125(a)(1) ...................................................................................................... 15

15 U.S.C. § 1127 ................................................................................................................ 12

FED. R. CIV. P. 8(a)(2) ......................................................................................................... 4

FED. R. CIV. P. 12(b)(1) .................................................................................................... 4, 9

FED. R. CIV. P. 12(b)(6) ....................................................................................................... 4

FED. R. CIV. P. 15 .............................................................................................................. 21

FED. R. CIV. P. 15(a)(1)(B) .................................................................................................. 4

FED. R. CIV. P. 15(a)(3) ....................................................................................................... 4

FED. R. EVID. 201(b) ........................................................................................................... 5

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – iv

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Notwithstanding Plaintiff Safety Star, LLC's assertion that its First Amended Complaint ("FAC") "cured" the defects identified in Defendant Aptibyte, LLC's motion to dismiss the original complaint, the FAC remains fatally flawed.

First, in a futile attempt to remedy its lack of standing to assert trademark claims relating to the "B-SAFE Trademarks," Safety Star offers what, at best, appears to be a backdated assignment of those marks and their corresponding registrations. Based on both the FAC and USPTO records for the "B-SAFE Trademarks," it is a temporal impossibility for the alleged assignment to have been signed on the date identified in the document. Therefore, the alleged trademark assignment – upon which Safety Star bases its claim to standing – fails to establish that Safety Star had standing at the time this lawsuit was filed to pursue the claims against Aptibyte relating to the "B-SAFE Trademarks."

Second, Safety Star's Lanham Act claims – for direct trademark infringement and false designation of origin – still fail to state any claim for relief. Despite the new allegation regarding Aptibyte's sale of memberships for its BingoBaker website, the FAC still fails to plausibly allege any commercial use of the "B-SAFE Trademarks" by Aptibyte in connection with the sale of goods or services. Thus, Safety Star's claims are subject to dismissal on this independent ground.

Additionally, the FAC should be dismissed with prejudice. None of the flaws discussed herein are new—both Safety Star's lack of standing and its failure to allege commercial use of the marks at issue were raised in Aptibyte's motion to dismiss the original complaint. Yet, those defects remain in the FAC. Thus, any further amendment would be futile.

## FACTUAL ALLEGATIONS

### I.    Safety Star, its Alleged "B-SAFE Trademarks," and the Alleged Assignment

Safety Star alleges that it provides "safety awareness programs and products" to consumers, including a "proprietary safety bingo program" under the alleged trademarks B-SAFE and BSAFE BINGO, which it refers to collectively as the "B-SAFE Trademarks." (Dkt. 15 at ¶¶ 8-9, 16.) Safety Star alleges that it has marketed and sold its "safety bingo program" under the "B-SAFE Trademarks" since 1992. (*Id.* at ¶ 9.) It allegedly markets and

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

offers for sale its "safety bingo program" directly to consumers. (*Id.* at ¶ 13.)

Safety Star alleged in both its original complaint and the FAC that it "is the owner" of two trademark registrations for the "B-SAFE Trademarks": (1) Registration No. 3,032,329 for the B-SAFE mark for "[b]ingo-type game cards for use in promoting safety"; and (2) Registration No. 5,660,503 for the BSAFE BINGO mark for "[b]oard games designed to promote employee safety awareness". (Dkt. 15 at ¶ 16.) However, the trademark registration certificates attached to both complaints indicate that an individual – Beau Culbertson – is the owner of the B-SAFE registration, not Safety Star. (Dkt. 15-1 at 5.) Additionally, Safety Star's alleged BSAFE BINGO mark is essentially identical to Culbertson's senior B-SAFE mark. Culbertson's B-SAFE mark was registered in December 2005 (*id.*), while Safety Star's alleged BSAFE BINGO mark was not registered until January 2019 (*id.* at 6). However, the "BINGO" component of Safety Star's alleged mark is generic and therefore Safety Star was required to disclaim exclusive rights to that portion of the mark. (*Id.*) Thus, the allegedly distinctive component of both marks is "BSAFE" and both "B-SAFE Trademarks" are used in connection with the same goods. (Dkt. 15 at ¶¶ 12-13, Exs. 1, 2.) Safety Star also conflates the two marks, consistently referring to them collectively in the FAC as the "B-SAFE Trademarks." (*See, e.g.*, *id.* at ¶¶ 16, 18-19, 21-22, 44-47, 50-55.)

In response to Aptibyte's argument in its motion to dismiss the original complaint that Safety Star lacks standing for its trademark claims, in the FAC, Safety Star provided a copy of a purported trademark assignment dated June 4, 2018 (the "Alleged Assignment"), which Safety Star alleges gives it "standing to bring this Complaint". (*Id.* at ¶ 18, Ex. 16.) However, on its face, the Alleged Assignment (which was not recorded with the USPTO) appears to be, at best, a *nunc pro tunc* assignment. First, the Alleged Assignment is dated June 4, 2018, but purports to assign the BSAFE BINGO mark *and* the corresponding registration, Registration No. 5,660,503. (Dkt. 15-1 at 38.) But as the registration certificate demonstrates, the application to register the BSAFE BINGO mark was filed on June 4, 2018, the date of the Alleged Assignment, and the registration for the mark did not issue until January 22, 2019. (Dkt. 15-1 at 6; Appendix B at 1,

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

7-13.) It therefore would have been impossible for the parties to the Alleged Assignment to know on June 4, 2018 whether the BSAFE BINGO application would mature into a registration, much less the specific registration number for that mark. Additionally, after the June 4, 2018 Alleged Assignment of the B-SAFE and BSAFE BINGO marks and registrations to Safety Star, the individual owner, Beau Culbertson, continued to file documents with the USPTO as the owner of the B-SAFE registration. (Appendix A at 3-6 (submissions dated June 29, 2018 and July 24, 2018).)

## II.     Aptibyte and its BingoBaker Website

Aptibyte operates a website, BingoBaker.com, that offers a "bingo card generator" which allows users to create their own bingo cards. (Dkt. 15-1 at 7-10 (using the slogan "Whip up a batch of bingo cards!").) As Safety Star's FAC demonstrates, the bingo card generator relies on content provided by the user; users enter a "bingo card title, choose a size, and type [their] words into the squares." (*Id.* at 8.) Users can also "drag-and-drop images into the squares and customize the color scheme" of the bingo cards they create. (*Id.*; *see also id.* at 9 (describing in more detail how users can generate their bingo card creations).)

Although Safety Star suggests that Aptibyte is the creator of the bingo cards on its bingo card generator website, Safety Star admits that the bingo cards are user generated. For example, Safety Star alleges that Aptibyte "could have implemented a . . . software mechanism to ***prevent consumers from generating bingo cards*** that incorporate the B-SAFE Trademarks[.]" (Dkt. 15 at ¶ 37 (emphasis added).) Similarly, in its cease-and-desist letter, Safety Star demanded that Aptibyte "***[p]revent visitors of <bingobaker.com> from generating, printing, or otherwise creating any bingo cards*** bearing any of the trademarks BSAFE, B-SAFE, and SAFETY STAR." (Dkt. 15-1 at 14 (emphasis added); *see also* Dkt. 15 at ¶¶ 29-30 (referring to consumers' generation of bingo cards allegedly bearing the "B-SAFE Trademarks").)

## III.     Procedural History

Safety Star filed its original complaint on May 15, 2023, alleging five causes of action, all of which were based on its alleged rights in the "B-SAFE Trademarks," including claims

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

under the Lanham Act for trademark infringement and false designation of origin, and several state law claims under Washington law. (Dkt. 1 at pp. 7-12.) On July 10, Aptibyte filed a motion to dismiss Safety Star's original complaint. (Dkt. 14.) On July 28, Safety Star filed its FAC pursuant to FED. R. CIV. P. 15(a)(1)(B) while Aptibyte's motion to dismiss the original complaint was pending. (Dkt. 15.) Thus, on August 1, Aptibyte filed a notice withdrawing its motion to dismiss the original complaint in light of Safety Star's filing of the FAC. (Dkt. 17.) Based on the July 28th filing date of the FAC, Aptibyte's response to that complaint was due August 11. *See* FED. R. CIV. P. 15(a)(3).

## DISCUSSION

### I.    Rule 12 Standards for Dismissal

#### A.    Rule 12(b)(1) – Safety Star's Lack of Standing

Under FED. R. CIV. P. 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. "[I]t is appropriate to address the question of standing in deciding a motion to dismiss" as standing is "an indispensable part of the plaintiff's case, and accordingly must be supported at each stage of litigation[.]" *Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1248 (E.D. Wash. 2004) (internal quotation marks omitted). The "burden of establishing standing remains at all times with the party invoking federal jurisdiction." *Id.* Where the defendant brings a facial attack on subject matter jurisdiction, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). The Court does not, however, accept the truth of legal conclusions "cast in the form of factual allegations." *Id.* (internal quotation marks omitted). Moreover, it is "well settled that standing cannot be inferred argumentatively from averments in the pleadings, . . . but rather must affirmatively appear in the record." *Nat'l Licensing*, 361 F. Supp. 2d at 1248 (internal quotation marks omitted).

#### B.    Rule 12(b)(6) – Safety Star's Failure to State a Claim for Relief

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

than an unadorned, the-defendant-unlawfully-harmed-me-accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Calderon v. Linebarger Goggan Blair & Sampson LLP*, No. 3:22-cv-05962-DGE, 2023 U.S. Dist. LEXIS 47844, *2 (W.D. Wash. Mar. 21, 2023) (plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action") (internal quotation marks omitted).

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (the allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the [defendant] to be subjected to the expense of discovery and continued litigation"). Moreover, the Court "need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007). Nor must the Court "accept as true . . . allegations that contradict facts that may be judicially noticed by the court." *Hewitt v. Wells Fargo Bank*, No. 3:22-cv-05729-DGE, 2022 U.S. Dist. LEXIS 211806, *8 (W.D. Wash. Nov. 22, 2022) (internal quotation marks omitted).

II.   **The Court Should Take Judicial Notice of USPTO Records for Safety Star's Alleged "B-SAFE Trademarks"**

Although, in considering a motion to dismiss, the Court is generally limited to the four corners of the complaint, it "is permitted to take judicial notice of facts that are 'not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Cave Man Kitchens, Inc. v. Caveman Foods, LLC*, No. 2:18-cv-01274 RAJ, 2019 U.S. Dist. LEXIS 140135, *6 (W.D. Wash. Aug. 19, 2019) (quoting Fed. R. Evid. 201(b)). Public records submitted or recorded with a governmental

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

agency, including records of the USPTO, are recognized sources of materials that are subject to judicial notice. *Muertos Roasters, LLC v. Schneider*, No. 2:22-cv-00051-KJM-KJN, 2022 U.S. Dist. LEXIS 156031, *2-4 (E.D. Cal. Aug. 30, 2022) (taking judicial notice of USPTO records in granting motion to dismiss as "records contradict[ed] plaintiff's alleged ownership of the subject trademarks"); *Cave Man Kitchens*, 2019 U.S. Dist. LEXIS 140135 at *6-7 (taking judicial notice of USPTO records for the marks at issue on motion to dismiss); *see also Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145 (N.D. Cal. 2020) ("Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice.").

Here, Aptibyte requests that the Court take judicial notice of the documents attached hereto as Appendix A and Appendix B, which consist of public records for the B-SAFE and BSAFE BINGO registrations obtained from the USPTO's Trademark Status & Document Retrieval database ("TSDR"). More specifically, **Appendix A** includes: the TSDR status report for the B-SAFE registration, including identification of the current owner of the registration and the absence of any recorded assignments of the registration; a "Change Of Correspondence Address" form filed with the USPTO on July 24, 2018; and a "Change Of Owner's Address" form filed with the USPTO on June 29, 2018. **Appendix B** includes: the TSDR status report for the BSAFE BINGO registration showing the application filing and registration dates for the mark; the Notice of Publication for the mark dated October 17, 2018; the Examiner's Amendment for the application dated September 21, 2018; and the application for the mark dated June 4, 2018. As discussed below, these USPTO records are relevant to Safety Star's lack of standing to pursue the claims alleged in the FAC.

Thus, because the materials in Appendix A and Appendix B are records submitted to a governmental agency whose accuracy cannot reasonably be questioned, Aptibyte respectfully requests that the Court take judicial notice of the records for purposes of this Motion to Dismiss.

## III.   Safety Star Lacks Standing to Assert Both of Its Trademark Claims

As the FAC demonstrates, both of Safety Star's claims are based on its alleged rights in the "B-SAFE Trademarks," which it refers to collectively and without differentiation throughout

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 6

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

the FAC. However, the Alleged Assignment of trademark rights in the "B-SAFE Trademarks" (B-SAFE and BSAFE BINGO) upon which Safety Star relies is indisputably backdated and therefore fails to establish Safety Star's standing to pursue its trademark claims against Aptibyte as of the time this lawsuit was filed. And in the absence of a valid assignment, on the face of the FAC, it appears that Beau Culbertson, not Safety Star, is the owner of the alleged trademark rights at issue. At the least, the FAC fails to clearly allege Safety Star's standing to assert those alleged rights as Safety Star bases its claims on Aptibyte's alleged infringement of the "B-SAFE Trademarks" collectively, notwithstanding the fact that the registrations only identify Safety Star as the owner of one of the marks. In short, Safety Star has failed to plausibly allege that it has standing to assert its trademark claims.

A.    **The Alleged Assignment is a Backdated *Nunc Pro Tunc* Assignment, Which is Insufficient for Standing At the Time the Lawsuit Was Filed**

A claim must be dismissed if it "does not contain any factual allegation sufficient to plausibly suggest" that it gives rise to an entitlement to relief. *Iqbal*, 556 U.S. at 683. Here, Safety Star's FAC, as well as USPTO records subject to judicial notice, refute Safety Star's allegation that it had standing to bring its trademark claims at the time it filed this lawsuit.

Safety Star's Alleged Assignment – which was not mentioned in its original complaint - is attached as Exhibit 16 to the FAC. While the Alleged Assignment is dated June 4, 2018, it is impossible for it to have been executed on that date. It purports to assign "U.S. Trademark Reg. # 5660503" for the BSAFE BINGO mark. (Dkt. 15 at ¶ 18, Ex. 16.) But on the date of the Alleged Assignment – June 4, 2018 – assignor Beau Culbertson could not have known that the pending application for BSAFE BINGO (which application was filed on the same date as the Alleged Assignment, June 4, 2018) would mature into a registration, let alone that it would be issued Registration No. 5,660,503. (*See* Appendix B at 1, 3-13.)

A simple examination of the FAC proves this. Exhibit 4 to the FAC is the registration certificate for BSAFE BINGO. That certificate identifies "Reg. No. 5,660,503" and a registration date of "Jan. 22, 2019." (Dkt. 15-1 at 6.) The certificate also indicates that the underlying

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

application for that mark was filed on June 4, 2018 – the date of the Alleged Assignment – and that the applicant was Safety Star, not Culbertson. (*Id.*; *see also* Appendix B at 1, 7-13.) Thus, in June 2018, it was impossible for Culbertson to have known that the application for the BSAFE BINGO mark would mature into a registration, much less the future registration number for that mark (which would not be issued until January 2019). The FAC therefore refutes any plausible argument that the Alleged Assignment was executed in June 2018.

There are other inconsistencies between the FAC and USPTO records that support the conclusion that the Alleged Assignment must be a backdated, *nunc pro tunc* assignment:

- After Culbertson's June 4, 2018 Alleged Assignment of the B-SAFE and BSAFE BINGO marks and registrations to Safety Star, on June 29, 2018, Culbertson filed a "Change Of Owner's Address" form with the USPTO in connection with the B-SAFE registration, listing himself as the owner, not Safety Star. (Appendix A at 5-6.)

- Similarly, after he allegedly assigned Safety Star the rights to the B-SAFE mark and registration on June 4, 2018, Culbertson filed a "Change Of Correspondence Address" form with the USPTO on July 24, 2018, which listed an address for Culbertson, not Safety Star. (*Id.* at 3.)

- As of this writing, the Alleged Assignment has not been recorded with the USPTO and Safety Star made no reference to it in this lawsuit until the FAC.

When resolving a motion to dismiss, "[a] court may . . . consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *Hanson v. MGM Resorts Int'l*, No. C16-1661-RAJ, 2017 U.S. Dist. LEXIS 113690, *4-5 (W.D. Wash. July 20, 2017). Here, consideration of those materials leads to only one plausible conclusion—that Safety Star's Alleged Assignment is a backdated, *nunc pro tunc* assignment. The impossibility of knowing the 2019 registration number for the BSAFE BINGO registration on the purported 2018 date of the Alleged Assignment and Culbertson's later inconsistent actions (*e.g.*, his submissions to the USPTO as owner of the B-SAFE

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 8

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

registration after the Alleged Assignment) leave no room for any other plausible conclusion.

A trademark owner must have standing to allege its causes of action *at the time the suit is filed*—a backdated assignment filed after the commencement of the lawsuit is insufficient. In *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, the Federal Circuit held that a party lacks standing to sue for trademark infringement if it does not own the trademark at issue at the time the lawsuit is filed. 93 F.3d 774, 777 (Fed. Cir. 1996). A subsequent assignment conferring ownership, even if purported to be retroactive, cannot cure a defect in standing. *Id.* at 779-80.

The Western District of Washington previously dismissed a trademark lawsuit for lack of standing in another case involving a *nunc pro tunc* assignment. In *Cave Man Kitchens Inc. v. Caveman Foods, LLC*, the court ruled as follows:

> At the time this lawsuit was commenced, plaintiff did not own the registered mark CAVE MAN KITCHENS, upon which all of its claims (and its alleged priority date) are based.
> Plaintiff's lack of standing is evidenced by Registration No. 3,222,887 for the service mark CAVE MAN KITCHENS, dated March 27, 2007 . . . , which was over four years before plaintiff even existed; plaintiff cannot be the entity to which the registration was granted. On May 30, 2018, after defendant had moved to dismiss this matter for *inter alia* lack of standing on plaintiff's part, an "Assignment Nunc Pro Tunc" in favor of plaintiff was executed by the president of the long defunct entity that had registered the mark CAVE MAN KITCHENS. . . . This attempted assignment fails to establish that, at the time this case was filed, plaintiff had legal title to the intellectual property at issue.

No. C18-273 TSZ, 2018 U.S. Dist. LEXIS 146835, *2-3 (W.D. Wash. Aug. 28, 2018). The court therefore dismissed the plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(1). *See id.* at *4 (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and [a] federal court therefore lacks subject matter jurisdiction over the suit.")).

A similar conclusion is warranted here. Like the *Cave Man* plaintiff's, Safety Star's purported *nunc pro tunc* assignment is impossible on its face and is therefore insufficient to establish Safety Star's standing at the time this lawsuit was filed. Thus, the Court should dismiss Safety Star's FAC pursuant to FED. R. CIV. P. 12(b)(1).

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

**B.    Without a Valid Trademark Assignment, Safety Star Lacks Standing**

*1.    Culbertson is the apparent owner of the relevant trademark rights*

"To acquire ownership of a trademark . . . the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Safety Star essentially admits that it is not the proper plaintiff by alleging that "[s]ince at least January 1992, Plaintiff has continuously manufactured, marketed, and sold the B-SAFE Bingo Program in commerce[.]" (Dkt. 15 at ¶ 10.) But that allegation ignores the fact that it is Culbertson's senior registration for the B-SAFE mark that alleges a 1992 first use date; Safety Star's first use date for its alleged BSAFE BINGO mark was not until 2001. (Dkt. 15-1 at 5 (first use date for B-SAFE), 6 (first use date for BSAFE BINGO).) As discussed above, the Alleged Assignment cannot have been executed on the date stated in the document and is therefore insufficient to establish Safety Star's standing.

Accordingly, all goodwill in the "B-SAFE Trademarks" as used in connection with the "B-SAFE Bingo Program" would appear to belong to Culbertson, not Safety Star. The Lanham Act provides that "[w]here a registered mark . . . is or may be used legitimately by related companies, **such use shall inure to the benefit of the registrant**[.]" 15 U.S.C. § 1055 (emphasis added). *See also Mountaineers Found. v. Mountaineers*, No. 2:19-cv-1819-RSL-TLF, 2022 U.S. Dist. LEXIS 237892, *11 (W.D. Wash. Apr. 8, 2022) ("A licensee's properly licensed use of a trademark increases the legal and commercial strength of the licensed mark – **without providing ownership rights in the mark itself to the licensee**.") (emphasis added), *adopted in relevant part by*, 2023 U.S. Dist. LEXIS 21474 (W.D. Wash. Feb. 8, 2023).

Even assuming that the senior B-SAFE registrant "Beau Culbertson" is another name for Safety Star's founder "Albert Culbertson" (Dkt. 15 at ¶ 8, Ex. 3) and that Safety Star therefore claims to be a "related company" (none of which is alleged in the FAC), Safety Star's use of the virtually identical BSAFE BINGO mark in connection with identical goods should inure to Culbertson's benefit, not Safety Star's. The FAC fails to allege a connection between Beau Culbertson and Safety Star and does not allege a valid trademark assignment or a license

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

granting Safety Star the right to either (1) register the essentially identical mark for the same goods or (2) sue for alleged infringement of the "B-SAFE Trademarks." It does allege, however, that the use of the conflated "B-SAFE Trademarks" beginning in 1992 – that is, **Culbertson's** trademark rights – is the basis for all causes of action. (*See id.* at ¶¶ 9-10, 20, 22 & Ex. 3.)

In *Glick v. Townsend*, the court found that the plaintiff did not have rights in his claimed trademark since he was not the first to "'actually use the mark in the sale of goods or services.'" No. CV 15-21-M-DLC-JCL, 2015 U.S. Dist. LEXIS 35213, *7 (D. Mont. Mar. 20, 2015) (quoting *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012)), *adopted by*, 2015 U.S. Dist. LEXIS 84158 (D. Mont. June 29, 2015), *aff'd*, 677 F. App'x 323 (9th Cir. 2017). The court concluded that the plaintiff's Lanham Act claims should be dismissed on the basis that "his pleading is subject to dismissal for failure to state a claim for trademark infringement upon which relief can be granted." *Glick*, 2015 U.S. Dist. LEXIS 35213 at *8.

All use of the "B-SAFE Trademarks" inures to Culbertson's benefit, and both causes of action are based on alleged infringement of trademarks that it appears only Culbertson may have senior rights to. Thus, based on the face of the FAC, Safety Star lacks standing to bring either of its trademark claims, and its FAC should therefore be dismissed.

### 2. *Safety Star fails to plausibly allege its standing as a result of its collective reliance on the "B-SAFE Trademarks" for its claims*

Additionally, Safety Star's FAC is simply too vague to allege its standing to assert any of its claims, all of which are based on alleged infringement of the "B-SAFE Trademarks."

The murkiness of Safety Star's purported standing is compounded by Safety Star's failure to differentiate between the two "B-SAFE Trademarks." From beginning to end, Safety Star's FAC relies on its purported "B-SAFE Trademarks" used in connection with the "B-SAFE Bingo Program" as the basis for both trademark claims. The first claim for federal trademark infringement alleges that Aptibyte infringed the "B-SAFE Trademarks." (Dkt. 15 at ¶ 44.) The second claim for false designation of origin is based on "Plaintiff's" rights in the "B-SAFE Trademarks." (*Id.* at ¶¶ 50-51.)

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 11

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Neither of the two claims differentiate between the two "B-SAFE Trademarks" for purposes of alleging the wrongful conduct. Thus, even assuming *arguendo* that Safety Star owned some trademark rights in one of the "B-SAFE Trademarks," it is impossible to tell from the FAC (1) which mark Aptibyte allegedly infringed for purposes of each of Safety Star's claims and (2) therefore which claims Safety Star may have sufficiently alleged its standing to assert. Courts regularly dismiss causes of action that are similarly unclear. *See, e.g.*, *BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-cv-03345-WHO, 2021 U.S. Dist. LEXIS 46939, *40 (N.D. Cal. Mar. 12, 2021) ("Plaintiffs have not adequately pleaded BMA's standing as it is unclear whether it is seeking to vindicate its own rights as opposed to the rights of its members."); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 U.S. Dist. LEXIS 50543, *9-10 (C.D. Cal. Apr. 28, 2011) (dismissing claim when "it is not clear that Plaintiffs have even alleged [the "injury in fact" requirement of standing]"); *Rooney v. Cortines*, No. CV 09-4770 ODW (PJWx), 2009 U.S. Dist. LEXIS 135658, *5 (C.D. Cal. Sept. 3, 2009) (dismissing employment contract-based claims as it was "not clear in the Complaint by whom Plaintiff was employed").

### C.   Safety Star Admits Its Alleged Trademark Registration is Junior to Aptibyte's Alleged Use and Fails to Allege Prior Knowledge

Safety Star's first claim for federal trademark infringement is based on its alleged rights in a registered trademark that are senior to Aptibyte's alleged rights in the mark. Safety Star purports to rely on both of the "B-SAFE Trademarks" for this claim. However, the FAC fails to plausibly allege facts supporting Safety Star's standing to assert the claim.

First, an action for trademark infringement may be brought by the "registrant" of the mark. 15 U.S.C. § 1114(1). *See also* 15 U.S.C. § 1127 (defining "registrant" to include "the legal representatives, predecessors, successors and assigns of such . . . registrant"). A party lacks standing to sue for trademark infringement if it does not own the trademark at issue at the time it files the lawsuit, and a subsequent assignment cannot cure a defect in standing. *Gaia Techs.*, 93 F.3d at 777-80. As discussed above, based on the allegations in and the exhibits attached to the FAC, Culbertson owns all rights to the "B-SAFE Trademarks," has not assigned the senior B-

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

SAFE mark to Safety Star, and cannot cure this failure with a subsequent assignment.

Second, even assuming *arguendo* that Aptibyte is using a "B-SAFE Trademark," Safety Star is not the senior registrant of a mark that is confusingly similar to Aptibyte's, and the Alleged Assignment is facially invalid to confer standing with respect to Culbertson's senior registration. In the first claim for trademark infringement, Safety Star alleges that "Defendant's use of the B-SAFE Trademarks constitutes an infringement of Plaintiff's trademarks." (Dkt. 15 at ¶ 44.) But as shown in the FAC, the application to register the "B-SAFE Trademark" allegedly owned by Safety Star – BSAFE BINGO – was filed in June 2018 and only registered in January 2019. (Dkt. 15-1 at 6.) Safety Star, however, alleges that Aptibyte began "offer[ing] bingo cards bearing the B-SAFE Trademarks since at least 2017." (Dkt. 15 at ¶ 27.) Since Safety Star did not apply to register the BSAFE BINGO mark until 2018 and the mark was not registered until 2019 – both occurring after Aptibyte's alleged first use of the "B-SAFE Trademarks" – the registration cannot serve as a basis for Safety Star's first claim.

Safety Star also does not allege that Aptibyte knew of its alleged BSAFE BINGO mark prior to March 2020, when it sent Aptibyte a cease-and-desist letter. (*Id.* at ¶ 31.) Accordingly, Safety Star has failed to state allegations sufficient to support a claim of federal trademark infringement. The Lanham Act provides that even an incontestable trademark registration – a status which Safety Star's alleged BSAFE BINGO registration has not yet achieved – is not infringed by a prior user who began its use of the alleged mark before the registrant's constructive use date of the mark (the application filing date) if that prior user has continuously used the mark after adopting it "without knowledge of the registrant's prior use." 15 U.S.C. § 1115(b)(5); *see also* 15 U.S.C. § 1057(c).

Third, the other "B-SAFE Trademark" Safety Star claims to own is B-SAFE, registered on December 20, 2005. But Beau Culbertson, not Safety Star, is the identified owner of that registration. (Dkt. 15-1 at 5.) Safety Star thus lacks standing to use the senior B-SAFE registration as a basis for its first claim for trademark infringement as the Alleged Assignment is backdated and insufficient to confer standing. *Gaia Techs.*, 93 F.3d at 777-80. Safety Star's

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 13

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

allegations emphasize its reliance on the senior B-SAFE trademark registration as a basis for relief: "Plaintiff's [sic] [registration] for B-SAFE was filed for before and registered before Defendant's infringing use commenced." (Dkt. 15 at ¶ 20.) But as discussed above, according to Safety Star's own FAC, it was not the owner of the B-SAFE registration at the time this lawsuit was filed. And Safety Star's 2019 BSAFE BINGO registration is junior to Aptibyte's alleged use of the "B-SAFE Trademarks" "since at least 2017." (*Id.* at ¶ 27, Ex. 4.) Thus, Safety Star cannot rely on the B-SAFE registration as a basis for its first cause of action and it does not allege that Aptibyte knew of the alleged BSAFE BINGO mark prior to its registration date of 2019.

Therefore, for any or all of these reasons, Safety Star lacks standing to assert any of its claims, all of which are based upon the undifferentiated "B-SAFE Trademarks."

## IV. Even if Safety Star Had Standing, It Again Fails to Establish an Entitlement to Relief Under the Lanham Act

Even ignoring the issues with respect to the Alleged Assignment and Safety Star's standing, the claims in the FAC for trademark infringement and false designation of origin under the Lanham Act suffer from the same fundamental and fatal flaws as those same claims in the original complaint. Specifically, Safety Star does not and cannot allege commercial use of the "B-SAFE Trademarks" in connection with the sale of goods or services, much less that there was such commercial use by Aptibyte (rather than the users who created bingo cards allegedly bearing the marks). Nor could Safety Star rescue its Lanham Act claims from dismissal by relying on or seeking to plead a theory of contributory trademark infringement. Therefore, Safety Star's Lanham Act claims should be dismissed with prejudice.

### A. The Claims for Direct Infringement Fail As Safety Star Does Not and Cannot Plausibly Allege Commercial Use of the Marks By Aptibyte

Safety Star's two Lanham Act claims allege trademark infringement and false designation of origin, both of which allege infringement of the "B-SAFE Trademarks." (Dkt. 15 at pp. 7-9.) The elements of both claims are the same. *SafeWorks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1189 (W.D. Wash. 2010) (stating that elements of trademark infringement and

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 14

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

false designation of origin claims under the Lanham Act are the same). For each, Safety Star must plausibly allege (1) that it owns a valid, protectable trademark, and (2) that Aptibyte used that mark in commerce on or in connection with goods or services in a manner that is likely to cause confusion. *Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1245, 1251-52 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 428 (2022); *see also Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017) (claims under Sections 1114 and 1125 "share a common inquiry: [w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?") (internal quotation marks omitted).

Even assuming Safety Star alleges a protectable mark that it owns, to state a claim for relief under both Sections 1114 and 1125, it must – but did not and cannot – allege that Aptibyte made commercial use of Safety Star's alleged "B-SAFE Trademarks" in connection with the sale of goods or services. "Infringement claims are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005); *Lahoti v. Vericheck, Inc.*, No. C06-1132JLR, 2007 U.S. Dist. LEXIS 64666, *25 (W.D. Wash. Aug. 30, 2007) (plaintiff must show that defendant "made commercial use of a mark that is similar enough to cause confusion in the minds of consumers about the origin of the goods or services in question"); *see also* 15 U.S.C. § 1114(1)(a) (referencing a defendant's "use [of a mark] in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services" that is likely to cause confusion); 15 U.S.C. § 1125(a)(1) (referencing a defendant's "use[] [of a mark] in commerce" in connection with goods or services that is likely to cause confusion).

Here, Safety Star fails to allege commercial use of its alleged "B-SAFE Trademarks" by Aptibyte in connection with the sale of goods or services. At most, it alleges that users – not Aptibyte – have used "bsafe" as the letters on user-generated bingo cards or as a description of the theme of such cards. (*See, e.g.*, Dkt. 15-1 at 11-12, 24-27.) Indeed, such use – as the letters for a bingo card or as the theme of the content of a bingo card – arguably is not even trademark use (*e.g.*, use to identify the source of goods or services); Safety Star's conclusory allegation that

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 15

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

such bingo cards "[bore] the mark BSAFE" (Dkt. 15 at ¶ 27) does nothing to demonstrate that there was a trademark/commercial use of a mark Safety Star claims to own.

Safety Star attempts to obscure this fundamental flaw in its trademark claims by alleging that Aptibyte is "engaged in the business of operating an online bingo card system at its website www.bingobaker.com." (*Id.* at ¶ 24.) But even assuming that accurately characterized Aptibyte's website, there is no allegation (nor could there be) that Aptibyte is using any trademark Safety Star claims to own to offer for sale a purported "online bingo card system." Rather, to the extent Aptibyte is offering such a system, it is offered under the "BingoBaker" mark.

The FAC does nothing to cure Safety Star's failure (and inability) to plausibly allege commercial use of its alleged "B-SAFE Trademarks" in connection with the sale of goods or services. First, in the FAC, Safety Star modified the allegation that Aptibyte is allegedly "engaged in *publishing* and distribution of bingo cards" purportedly bearing the "B-SAFE Trademarks" (Dkt. 1 at ¶ 22 (emphasis added)) to now allege that it is engaged in "*the creation* and distribution*" of such bingo cards (Dkt. 15 at ¶ 23 (emphasis added)). But that naked allegation fails to allege any actual facts demonstrating Aptibyte's "creation" of bingo cards allegedly bearing the "B-SAFE Trademarks." To the contrary, the FAC demonstrates that it is *users* of the BingoBaker website – not Aptibyte – who generate or create bingo cards using some form of "bsafe." (*See, e.g.*, Dkt. 15 at ¶ 29 (alleging Aptibyte hosts "bingo cards generated by customers"), ¶ 30 (alleging Aptibyte "allows consumers to generate . . . bingo cards bearing the B-SAFE Trademarks"), ¶ 37 (alleging Aptibyte could implement a software mechanism "to prevent consumers from generating bingo cards that incorporate the B-SAFE Trademarks"); Dkt. 15-1 at 14 (demanding that Aptibyte prevent website visitors "from generating . . . or otherwise creating any bingo cards bearing" the "B-SAFE Trademarks").)[1]

---

[1] Additionally, in its motion to dismiss the original complaint, Aptibyte argued in part that Safety Star's state law claims were barred by Section 230 because those claims sought to hold Aptibyte liable for content created by the users of its websites, namely, the user-generated bingo cards allegedly bearing the "B-SAFE Trademarks." (Dkt. 14 at 16-19.) Safety Star's abandonment of those claims in the FAC and its admission that it amended its original complaint

1    Second, Safety Star's new allegation that Aptibyte offers paid memberships to its

2    BingoBaker website (Dkt. 15 at ¶¶ 38-39, Exs. 14-15) does not plausibly allege Aptibyte's

3    commercial use of the "B-SAFE Trademarks" in connection with the sale of goods or services.

4    To the contrary, the existence of paid memberships to the BingoBaker website at most

5    demonstrates commercial use of the "BingoBaker" mark in connection with the sale of goods or

6    services (*e.g.*, memberships to the "BingoBaker" website). It does not demonstrate commercial

7    use of any "B-SAFE" trademark in the sale of the website memberships, and Safety Star does not

8    (and cannot) allege otherwise. "The Supreme Court has made it clear that trademark

9    infringement law prevents only unauthorized uses of a trademark in connection with a

10   commercial transaction in which the trademark is being used to confuse potential consumers."

11   *Bosley*, 403 F.3d at 676. Here, Safety Star does not and cannot allege that Aptibyte is making

12   unauthorized use of the "B-SAFE Trademarks" in connection with the sale of memberships to

13   the "BingoBaker" website, much less use that is likely to cause confusion.

14   In short, Safety Star's only basis for its trademark claims is that some user-generated

15   bingo cards hosted on Aptibyte's website use "bsafe" on the cards (Dkt. 15 at ¶ 26); but merely

16   referring to that term as a "mark" does not render any use of the term commercial use, much less

17   confusing use of any trademark Safety Star claims to own. *Prestonettes, Inc. v. Coty*, 264 U.S.

18   359, 368 (1924) (a trademark "does not confer a right to prohibit the use of the word").

19   Moreover, even if there were commercial use of Safety Star's marks (which Safety Star

20   has not alleged), any such use was *by the users* who created the bingo cards that allegedly

21   included the marks, not Aptibyte. Safety Star's assertion that Aptibyte purportedly could have

22   "implemented a . . . software mechanism to prevent consumers from generating bingo cards that

23   [allegedly] incorporate the B-SAFE Trademarks" (Dkt. 15 at ¶ 37) conclusively demonstrates

24   that its claims are based on the users' alleged use of Safety Star's marks. Indeed, the FAC only

25

26   "in light of [Aptibyte's] motion" (Dkt. 16 at 3) suggest that Safety Star recognized that the bingo
     cards were created by users, not Aptibyte.

27

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

further cements this conclusion by alleging that Aptibyte hosts "bingo cards *generated by customers*" and "*allows consumers to generate*" bingo cards allegedly "bearing the B-SAFE Trademarks." (*Id.* at ¶¶ 29-30 (emphasis added).) *See, e.g.*, *Johnson v. Meta Platforms, Inc.*, No. 22-cv-05691-BLF, 2023 U.S. Dist. LEXIS 136027, *14 (N.D. Cal. Aug. 4, 2023) (finding that "[a]llegations that third parties used [plaintiff's] trademark is insufficient to allege liability against Meta"); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 979-80, 982 (N.D. Cal. 2015) (finding no direct infringement claims where no allegation that Amazon and Google "themselves used the [plaintiff's] mark in commerce" as it was the third-party app developers who allegedly infringed plaintiff's mark); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) (concluding that eBay's alleged knowledge about counterfeit Tiffany products offered on its auction website may be "relevant to the issue of whether eBay contributed to the direct infringement of Tiffany's mark by the counterfeiting vendors" but "it is not a basis for a claim of direct trademark infringement against eBay").

Thus, Safety Star's claims for direct infringement and false designation of origin necessarily fail either because (1) there was no commercial use of Safety Star's marks or (2) any alleged commercial or trademark use was by the users of Aptibyte's website, not Aptibyte. *See, e.g.*, *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 U.S. Dist. LEXIS 170715, *19-21 (S.D.N.Y. Sept. 30, 2019) (dismissing plaintiff's claim for direct trademark infringement against online platforms finding that it was "users of [the platforms'] services, who allegedly used [plaintiff's] trademark[s] in connection with the sale of goods—not [the platforms]") (internal quotation marks omitted); *Free Kick Master*, 140 F. Supp. 3d at 982 (dismissing direct trademark infringement and false designation of origin claims with respect to allegedly infringing apps available on the Google and Amazon app stores because plaintiff "allege[d] no facts showing that Amazon or Google in fact 'used' the mark or that that 'use' created a likelihood of confusion").

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

1

### B.   Even if Safety Star Attempts to Rely on a Theory of Contributory Infringement, Any Such Claim Would Also Be Subject to Dismissal

2

3          Nor could Safety Star plausibly allege a claim for contributory infringement, even

4    assuming that it had pled such a claim in its FAC or sought leave to further amend its complaint

5    to add such a claim. To state such a claim, Safety Star would have to establish that Aptibyte

6    "(1) intentionally induced the primary infringer [the website user] to infringe, or (2) continued to

7    supply an infringing product to an infringer with knowledge that the infringer is mislabeling the

8    particular product supplied." *Perfect 10*, 494 F.3d at 807. Additionally, where the defendant

9    provides a service, the plaintiff must establish that the service provider "continued to supply its

10   services to one who it knew or had reason to know was engaging in trademark infringement" and

11   "the court must consider the extent of control exercised by the defendant over the third party's

12   means of infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936,

13   942 (9th Cir. 2011) (internal quotation marks omitted); *see also Tiffany*, 600 F.3d at 103-06.

14          Applying that standard, the Second Circuit in *Tiffany* held that eBay could not be liable

15   for the website users' use of Tiffany's marks in connection with counterfeit goods sold on the

16   auction website because:

17              [f]or contributory trademark infringement liability to lie, a service provider must
18              have more than a general knowledge or reason to know that its service is being
                used to sell counterfeit goods. Some contemporary knowledge of which particular
19              listings are infringing or will infringe in the future is necessary.

20   600 F.3d at 107. Tiffany's generalized allegations regarding counterfeiting occurring on eBay

21   failed to give it the particularized knowledge required for a contributory infringement claim. *Id.*

22   at 109. And, although eBay did receive complaints about certain sellers selling counterfeits,

23   "those sellers' listings were removed and repeat offenders were suspended from the eBay site."

24   *Id.* Thus, the court concluded that "Tiffany failed to demonstrate that eBay was supplying its

25   service to individuals who it knew or had reason to know were selling counterfeit Tiffany

26   goods." *Id. See also Lopez*, 2019 U.S. Dist. LEXIS 170715 at *31-39 (rejecting contributory

27   trademark infringement claim against online platforms based in part on the conclusion that the

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 19

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

platforms did not have the requisite knowledge of specific infringing conduct that the platforms did not address); *Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG, 2016 U.S. Dist. LEXIS 36444, *10 (N.D. Cal. Mar. 21, 2016) ("Absent specific notice of trademark infringement, Google cannot be liable for contributory infringement merely for failing to remove infringing apps preemptively."); *Free Kick Master*, 140 F. Supp. 3d 982-83 (rejecting contributory trademark infringement claim as plaintiff alleged no facts "showing that Amazon or Google intentionally induced the third-party developers to infringe plaintiff's mark, or that they knew that the third-party developers' apps/games were infringing plaintiff's mark but continued to allow the infringing apps/games to remain available"). The Ninth Circuit recently agreed with the Second Circuit (and other circuits) and adopted the same standard requiring knowledge of specific instances of infringement to support a claim for contributory trademark infringement. *See Y.Y.G.M. SA v. Redbubble, Inc.*, Nos. 21-56150 & 21-56236, 2023 U.S. App. LEXIS 18743, *10-16, ___ F.4th ___ (9th Cir. July 24, 2023) (discussing *Tiffany* and other cases and concluding that "willful blindness for contributory trademark liability requires the defendant to have specific knowledge of infringers or instances of infringement").

Here, Safety Star could not plead a contributory trademark infringement claim as it cannot plausibly allege the necessary "contemporary knowledge of which particular [user content] are infringing or will infringe" that Aptibyte did not address in response to Safety Star's communications. *See Spy Phone*, 2016 U.S. Dist. LEXIS 36444 at *9; *see also Y.Y.G.M.*, 2023 U.S. App. LEXIS 18743 at *16 ("Removing infringing listings and taking appropriate action against repeat infringers in response to specific notices may well be sufficient to show that a large online marketplace was not willfully blind."). Safety Star's general allegations about allegedly "infringing bingo cards" being hosted on Aptibyte's website and the absence of allegations that Aptibyte failed to address any such allegedly infringing cards in response to Safety Star's notices are insufficient to state such a claim. *See Spy Phone*, 2016 U.S. Dist. LEXIS 36444 at *9 ("Notice of certain acts of infringements does not imply generalized knowledge of—and liability for—others."). Moreover, Safety Star could not even establish that

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

use of "bsafe" on user-generated bingo cards is infringing in every (or even any) situation, such that any contemporary knowledge it alleges Aptibyte may have about such use of the term equates with knowledge of infringement. Therefore, even if Safety Star had pled or requests leave to plead a contributory infringement claim, that claim would fail as it cannot make the necessary showing that specific infringing activity was occurring that Aptibyte had contemporary knowledge of and failed to address (*e.g.*, by removing the allegedly infringing user-generated content). *See, e.g.*, *Atari Interactive, Inc. v. Redbubble, Inc.*, No. 21-17062, 2023 U.S. App. LEXIS 18805, *3 (9th Cir. July 24, 2023) (finding Redbubble's removal of "specific infringing listings" upon notification from Atari "was reasonable" and therefore affirming district court's conclusion that Redbubble was not willfully blind for purposes of contributory infringement claim).

## V. Safety Star's FAC Demonstrates That Dismissal Should Be With Prejudice

As a general principle, FED. R. CIV. P. 15 is liberally construed to permit amendment of pleadings. However, as relevant here, that principle does not require the Court to allow futile amendments. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (finding that denial of leave to amend was not an abuse of discretion "when any proposed amendment would be futile"). *See also Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-cv-00428-DGE, 2022 U.S. Dist. LEXIS 33643, *8 (W.D. Wash. Feb. 25, 2022) ("When an amendment is futile, there [is] no need to prolong litigation by permitting further amendment.") (internal quotation marks omitted). Indeed, the Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Here, futility supports dismissing the FAC with prejudice. First, the fundamental flaws in the FAC discussed herein are identical to the flaws in Safety Star's original complaint that Aptibyte identified in its first motion to dismiss. But, despite having the benefit of Aptibyte's discussion of these flaws in its motion to dismiss the original complaint, Safety Star failed to remedy those defects in the FAC. (*See* Dkt. 16 at 3 (claiming to have "cured" the defects

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

identified by Aptibyte's first motion to dismiss in the FAC).)

Second, standing to pursue the claims alleged in this case is a fundamental element of Safety Star's case and is based on facts wholly and uniquely within Safety Star's possession. Nonetheless, Safety Star has now twice failed to sufficiently establish its standing to pursue the claims against Aptibyte at the time it filed this lawsuit. Allowing Safety Star a third opportunity to plead a basic element of its claims would only "prolong litigation" to Aptibyte's detriment, forcing Aptibyte to continue to incur costs defending against meritless claims. *See, e.g.*, *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS, 2015 U.S. Dist. LEXIS 179509, *6-8 (E.D. Wash. Nov. 30, 2015) (dismissing with prejudice trademark infringement and counterfeiting claims in first amended complaint due to lack of standing).

Third, even disregarding Safety Star's demonstrated inability to establish its standing, Safety Star also cannot establish commercial use by Aptibyte of any trademark it claims to own, and therefore cannot allege any plausible trademark-based claim against Aptibyte. No amendment can remedy that fatal flaw in Safety Star's Lanham Act claims, both of which are grounded in alleged trademark infringement. *See, e.g.*, *Lopez*, 2019 U.S. Dist. LEXIS 170715 at *19-21, 61 (dismissing first amended complaint with prejudice where court concluded in part that plaintiff failed to allege online platform defendants' commercial use of plaintiff's marks); *Micro/sys, Inc. v. DRS Techs., Inc.*, No. CV 14-3441 DMG (AJWx), 2015 U.S. Dist. LEXIS 193891, *13-18 (C.D. Cal. Feb. 13, 2015) (dismissing Lanham Act claims without leave to amend where plaintiff "failed to plead a commercial use . . . as a matter of law" and amendment would be futile).

As a result, dismissal should be with prejudice and without leave to amend.

## CONCLUSION

For the reasons described herein, Aptibyte respectfully requests that its Motion to Dismiss be granted and that Safety Star's FAC be dismissed with prejudice.

//

//

MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:23-cv-05440-DGE) – 22

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Dated this 10th day of August, 2023.          Respectfully submitted,

FOCAL PLLC

By:  *s/ Stacia N. Lay*
     *s/ Randall H. Moeller*
     Stacia N. Lay, WSBA #30594
     Randall H. Moeller, WSBA #21094
     900 1st Avenue S., Suite 201
     Seattle, Washington 98134
     Tel: (206) 529-4827
     Fax: (206) 260-3966
     Email: stacia@focallaw.com
     Email: randall@focallaw.com

Attorneys for Defendant Aptibyte, LLC

## **WORD LIMIT CERTIFICATION**

I certify that this memorandum contains 8,350 words, in compliance with the Local Civil Rules.

By:  *s/ Stacia N. Lay*
     Stacia N. Lay, WSBA #30594

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966